

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0891-15

### ARTHUR FRANKLIN MILLER, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S MOTION FOR REHEARING AFTER
### OPINION ON DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

ALCALA, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

### DISSENTING OPINION

Should this Court greatly expand upon Supreme Court precedent describing the law for claims of ineffective assistance of counsel so as to permit a defendant to obtain a new trial when an exhaustive review of the evidence introduced in the guilt and punishment phases of his trial shows that the outcome of his case was not prejudiced by his attorney's complained-of bad advice? I respectfully disagree with this Court's majority opinion that

appears to answer this question "yes." Rather than expanding a defendant's federal constitutional right to effective counsel in a manner that goes beyond the parameters set forth by the Supreme Court, I would apply that Court's precedent in *Strickland v. Washington*, 466 U.S. 668 (1984). Applying that precedent to this case, I would affirm the court of appeals' judgment against Arthur Franklin Miller, Jr., appellant, upholding his convictions for aggravated sexual assault of a child and indecency with a child, for which he received sentences of twenty-two years' imprisonment and ten years' imprisonment, respectively. The court of appeals' judgment affirmed the trial court's ruling denying appellant's motion for new trial, in which he had presented a claim of ineffective assistance of trial counsel. Appellant's claim contended that his trial attorney misadvised him that the trial court could consider a probated sentence if it convicted him at a court trial. The State concedes that trial counsel performed deficiently in that respect and that appellant has established the first of the two required *Strickland* prongs for establishing an ineffective-assistance claim. The sole question in this appeal, therefore, is whether appellant has proven the second *Strickland* prong requiring him to show that he was prejudiced by counsel's bad advice. This Court's majority opinion agrees with appellant that, under these circumstances, courts should limit the prejudice analysis solely to a consideration of the defendant's decision-making process—that is, courts should consider only whether the defendant would have waived his right to a jury trial in favor of a court trial if he had been properly advised about his ineligibility for a probated sentence after a court trial. I, however, conclude that when, as

here, a defendant's waiver of a jury trial resulted in a court trial rather than in a waiver of the entire trial proceedings, then appellate courts must consider whether it is reasonably probable that counsel's erroneous advice affected the outcome of the proceedings as a whole. Here, therefore, the relevant question before the court of appeals was whether the trial court properly rejected appellant's ineffective-assistance claim because, regardless of trial counsel's bad advice about appellant's probation ineligibility after a court trial, the probable outcome after a jury trial would have been the near equivalent of the actual outcome of the court trial that was had. Because appellant has not demonstrated prejudice under the applicable law set forth by the Supreme Court, I would affirm the court of appeals' judgment.[1]

## I. Background

Because it involves an entire guilt and punishment trial on the merits and is at the rehearing stage in this Court, this case's background is lengthy. I examine its background

---

[1] This Court's majority opinion's great expansion and liberalization of the law governing claims of ineffective assistance of counsel may be considered by some individuals, at first blush, to benefit the criminal justice system, but I respectfully disagree with that position. Claims of ineffective assistance should be granted, but only when counsel's deficient performance has actually prejudiced or harmed a defendant. This type of claim was never intended to be a windfall for defendants whose cases were not actually prejudiced by an attorney's deficient performance. No attorney is perfect all the time, and even exceptional attorneys may perform deficiently in particular instances. So the criminal justice system acknowledges the reality that attorneys will, at times, not perform perfectly. We must be cautious to only sustain claims of ineffective assistance of counsel for those defendants who prove both of *Strickland*'s prongs because public confidence in the criminal justice system may be incrementally diminished by the lack of finality of convictions and the repeated retrials that require victims to relive their attacks merely because a defendant is dissatisfied with an outcome that would have occurred regardless of his attorney's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 693 (1984) (noting "the profound importance of finality in criminal proceedings").

by discussing the trial on the merits, the motion for new trial, the court of appeals' opinion, and this Court's plurality opinion on original submission of the petition for discretionary review, including the grounds for rehearing that decision.

**A. Trial on the Merits**

Appellant is the grandfather of A.M. and the step-grandfather of K.F. The State charged appellant with indecency with a child and aggravated sexual assault of A.M. and sexual offenses against K.F. *See* TEX. PENAL CODE §§ 21.11, 22.021. Appellant pleaded not guilty to the charges, and the case was called for trial.

Before the trial began, the trial court admonished appellant about his rights and determined that appellant was freely and voluntarily waiving his right to a jury trial and opting to proceed with a bench trial. In making that determination, the trial court discussed with appellant the fact that he had a right to a jury trial, that a jury could consider a probated sentence in his case, and that no one had promised him anything in exchange for his waiver of a jury. Although he did specifically advise appellant that a jury could consider a probated sentence, the trial judge did not inform appellant that a consequence of a court trial rather than a jury trial was that the judge could not consider that type of sentence under the applicable law. The judge specifically confirmed with appellant that "no one has forced [him] or threatened [him] or promised [him] anything or done anything" to induce him to waive a jury trial.

At the court trial, each party gave opening statements and closing arguments, and

eight witnesses testified, four for each side. The State called the investigating peace officer and the forensic interviewer, each of whom discussed certain evidence that either corroborated or was consistent with the allegations of abuse. The State's remaining witnesses were the two complainants. A.M., who was twenty-two years old by the time of trial, testified that, when she was around ten years old, appellant engaged in inappropriate behavior that "eventually led to sexual abuse." Appellant would make "awkward comments that [she] was uncomfortable with," try to undo her bathing suit top, and try to watch her change clothes and shower. A.M. testified that appellant would take her for a ride on his two-seat jet ski and refuse to take her back until she kissed him on the lips. She testified that appellant would awaken her at night and ask her to sit on his lap, show her pornography, and rub and penetrate her vagina with his fingers. A.M. testified that this occurred on more than one occasion. A.M. explained that she was afraid to report the abuse because appellant led her to believe that he would stop financially supporting her father if she told anyone and that "nobody would believe [her], and everybody would hate [her]." K.F. testified that, when she was approximately four years old, appellant forced her to touch his penis when she sat on his lap to play a computer game.

Appellant's defense witnesses included the defense investigator, who presented evidence that contradicted the complainants' testimony about the timeline of abuse. Appellant's three remaining witnesses were appellant's and the complainants' relatives. They disagreed with certain details regarding the complainants' accounts of the abuse.

Furthermore, appellant's daughter additionally testified that she believed the allegations were instigated by K.F.'s mother and that K.F. had essentially indicated that her allegation against appellant was not true. After closing arguments, the trial court found appellant guilty of the charges for the conduct against A.M. and not guilty of the charges pertaining to K.F.

At the punishment phase of trial, the parties proceeded to make arguments as if appellant could be considered for community supervision by the trial court. A.M. was the sole witness called by the State to provide substantive testimony. A.M. testified that she felt that, as a result of the abuse, her "entire life[] has been violated," that she suffered from depression and trust issues from the abuse, and that she "lost [her] family" by coming forward. When asked whether she believed that appellant deserved probation, she responded that he did not because "he took things away from me that can never be replaced."

The parties' opposing closing arguments discussed whether appellant was a suitable candidate for community supervision. On the one hand, the State argued that community supervision was inappropriate due to the severe impact the abuse had on A.M. On the other hand, trial counsel argued that a probated sentence in addition to counseling and therapy was appropriate because appellant had no prior convictions for felony offenses, and the absence of any claims of abuse by appellant in recent years suggested that he had changed. Additionally, trial counsel noted that, because appellant was seventy-eight years old and in "poor health," any prison sentence would functionally be a life sentence. Counsel also observed that appellant would be required to register as a sex offender. Without commenting

about any rationale for declining to impose the community supervision that had been requested by trial counsel, the trial court sentenced appellant to twenty-two years' imprisonment for the aggravated sexual assault and ten years' imprisonment for the indecency with a child by contact.

### B. Motion for New Trial

After receiving new counsel for purposes of appeal, appellant filed a written motion for new trial alleging ineffective assistance of counsel on the basis that trial counsel had erroneously promised him that he would receive probation if he was found guilty by the trial court. This advice was erroneous because, under the former law that applied to appellant's offenses that were committed in 2001, only a jury could recommend a probated sentence if he was found guilty of the offenses. *See* TEX. CODE CRIM. PROC. ANN. Art. 42.12 §§ 3(g), 4, 5 (West 2006).[2] Appellant argued that he would have elected a jury trial rather than a bench trial had trial counsel properly advised him that the trial court could not award a probated sentence. In support of the motion, appellant included affidavits from himself and two of his sons. Trial counsel did not submit an affidavit in response to the allegations.

The trial court then held an evidentiary hearing at which four witnesses testified.

---

[2] Because appellant's offenses occurred in 2001, prior to the law being changed in such a manner as to entirely preclude the possibility of probation under these circumstances, appellant was eligible to receive probation from the jury for these offenses. TEX. CODE CRIM. PROC. art. 42.12, § 4 (West 2006). The Legislature subsequently changed the law to preclude jury-recommended community supervision for these offenses, applicable to offenses committed after September 1, 2007. *See* TEX. CODE CRIM. PROC. art. 42.12, § 4(d)(5) (West 2016). In any event, appellant was not eligible to receive probation from the trial judge for these offenses. *Id.* § 3g(a)(1)(C), (E).

Appellant and several of his family members testified that trial counsel had repeatedly urged him to waive a jury trial and proceed with a bench trial because, if the trial judge found him guilty, the judge would give him probation due to his elderly age, lack of criminal history, and the weakness of the State's case. The trial court denied appellant's motion for new trial. Although he did not make written findings of fact and conclusions of law, the trial judge did make oral findings and conclusions on the record. Following the trial court's ruling, appellant timely appealed.[3]

## C. Intermediate Appeal and Petition for Discretionary Review

On appeal, the court of appeals upheld the trial court's ruling denying appellant's motion for new trial. *Miller v. State*, No. 05-14-01065-CR, 2015 WL 3456783, at *1 (Tex. App.—Dallas June 1, 2015) (mem. op., not designated for publication). In its arguments to

---

[3] In his comments on the record before rejecting appellant's new-trial complaint, the trial judge observed that there was some confusion about the possibility of a probated sentence based on the date of the offense. Initially, the trial judge believed the offense occurred after the 2007 change to the Code of Criminal Procedure that removed aggravated sexual assault and indecency with a child from the list of probation-eligible offenses, and he advised appellant that probation was not a possibility at all. After the trial judge was informed that the offense occurred before the 2007 change to the Code of Criminal Procedure, the trial judge informed appellant "that a jury could give him probation. At no point was he advised that the Court could give him probation." The judge found that, based on the evidence presented at the motion for new trial, defense counsel advised appellant that the trial court could award probation. The judge further noted that he was aware during the punishment phase of trial that appellant was ineligible to receive probation from the court. He stated, "The attorneys were discussing probation. And I recall thinking he's not eligible for probation, but they argued it and discussed it and proved it up. And I rendered my verdict at that point. So, although it said in there that I considered and rejected probation, there was–I believe that was in Mr. Grass's [appellant's trial counsel's] e-mail that I rejected considering probation. I actually never considered probation, because I remember thinking, well, they're talking about it, but I don't think I've got that option even if I wanted to."

that court, the State conceded that trial counsel's performance objectively fell below reasonable professional norms and thus constituted deficient performance, satisfying the first prong under *Strickland. Id.* at *2. The court of appeals' analysis, therefore, turned solely on whether counsel's deficient performance had prejudiced appellant under the second prong of *Strickland. Id*. at *3. The court of appeals' description of the issue was "whether there was a 'reasonable probability' that the result of the proceeding would have been different if appellant's attorney had given him correct advice; that is, whether a jury would have sentenced appellant to probation." *Id*. (citing *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012)). The court of appeals determined that appellant had failed to show that he was prejudiced by counsel's erroneous advice because (1) the trial judge could have disbelieved appellant's assertion that he would not have waived a jury if he had known that the judge was unable to assess probated sentences, and (2) appellant had failed to show a reasonable probability that a jury would have awarded him the probated sentences. *Id.* at *4-5.

On appellant's petition for discretionary review challenging the standard employed by the court of appeals to assess whether he was prejudiced by counsel's error, a plurality of this Court affirmed the judgment of the court of appeals.[4] In analyzing the proper standard for evaluating prejudice, we considered the articulations of the prejudice inquiry that have been advanced for two distinct sets of circumstances. We observed that, in the first

---

[4] Appellant's ground for review asked, "Did the Court of Appeals err by finding that trial counsel's deficient performance regarding Appellant's probation eligibility, which Appellant relied upon in waiving his constitutional right to a jury trial, was not prejudicial under *Strickland*?"

circumstance in which there has been an entire trial or appellate proceeding, the proper inquiry is whether counsel's deficient performance during that proceeding undermined the confidence in the outcome of the proceeding.[5] In the second circumstance in which a defendant has entered a plea of guilty or no contest and thus no trial has occurred, we observed that the prejudice inquiry focuses on whether counsel's deficient performance during the plea proceedings resulted in a defendant's decision to completely forgo a trial or appellate proceeding.[6] A plurality of this Court determined that in appellant's case, because there had been an entire trial proceeding for which the confidence in its outcome could be evaluated, we would apply the ordinary *Strickland* prejudice standard that asks whether, but for counsel's error, there was a reasonable probability of a different outcome. We upheld the court of appeals' affirmance of the trial court's denial of appellant's motion for new trial.

Shortly after this Court issued its original opinion in this case, the U.S. Supreme Court decided *Lee v. United States*, 137 S. Ct. 1958 (2017), and this Court granted appellant's motion for rehearing to determine if *Lee* undermined our reasoning. A majority of this Court concludes that it does. As I discuss more fully in the next section, I respectfully disagree with this Court's characterization of *Lee* as having any impact on the instant case, and I continue to believe that this case was correctly decided by the plurality opinion issued on original submission of appellant's petition for discretionary review.

---

[5] *See Strickland*, 466 U.S. at 694.

[6] *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

## II. The Proper Prejudice Standard for Ineffective Assistance Claims

As the discussion below shows, the Supreme Court has recognized that the prejudice prong for establishing ineffective assistance of counsel varies depending on whether a defendant opted for a trial proceeding or instead waived a trial and decided to enter a plea of guilty or no contest to a charge. In the first situation, the prejudice inquiry focuses on the probable outcome of the proceedings in the absence of counsel's error, whereas in the latter situation, the inquiry focuses on whether, but for counsel's error, the defendant would not have pleaded guilty and would have instead pursued a trial. Here, I explain that, because there was a complete trial proceeding, it is appropriate to examine how appellant's attorney's deficient performance affected the outcome of that proceeding, rather than more narrowly considering only the effect of counsel's error on appellant's decision to waive a jury.

### A. Applicable Law for Establishing Prejudice Depends on Whether There was a Trial or a Waiver of an Entire Trial Proceeding

The law applicable to the prejudice prong can be divided into two spheres, one of which includes jury and court trial proceedings, and the other of which includes guilty and no-contest pleas that forgo trial proceedings. I discuss the law applicable to these two spheres before explaining why the prejudice standard in the instant case should fall within the first sphere.

### 1. Sphere One: Prejudice in a Court or Jury Trial

Under *Strickland*, in cases asserting ineffective assistance of counsel based on claims that counsel performed deficiently during either the guilt or punishment phases of trial, courts

must apply the prejudice standard that focuses on whether there is a reasonable probability that the result of the proceedings would have been different but for the attorney's deficient performance. *See Strickland*, 466 U.S. at 694. The *Strickland* two-prong standard to establish an ineffective-assistance claim requires a defendant to show that, under the totality of the evidence, (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) but for such deficient performance, a reasonable probability exists that the result of the proceeding would have been different. *Id*. at 688, 694-95. The Court explained that a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

With respect to the required prejudice showing in situations involving a trial, the *Strickland* test acknowledges the "strong presumption of reliability" that courts "normally apply . . . to judicial proceedings[.]" *Smith v. Robbins*, 528 U.S. 259, 286 (2000) (citing *Strickland*, 466 U.S. at 696). To establish prejudice, a defendant must prove actual prejudice; theoretical prejudice is not enough. *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000). To prove prejudice, a defendant must show how "'specific errors of counsel undermined the reliability of the finding of guilt'" or the punishment assessed. *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 n. 26 (1984)). Furthermore, actual prejudice is considered under an objective standard rather than being based on speculation about the possibility of jury nullification or some other extreme event. *Strickland*, 466 U.S. at 694-95. The *Strickland* Court observed that the "assessment of prejudice should proceed on the

assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id*. at 695.

The *Strickland* prejudice standard applicable to ordinary jury and court trials, therefore, considers whether there is a reasonable probability that, but for counsel's mistake, the defendant would have received a more favorable outcome either at the guilt or punishment phase of trial. But what about those cases in which a defendant pleads guilty or no contest and there are no court or jury trial proceedings to consider? As I discuss next, the Supreme Court has held that, in those cases, the prejudice standard looks to the waiver of the trial rather than the outcome of the proceedings.

**2. Sphere Two: Prejudice in Guilty or No Contest Pleas Based on a Waiver of Trial**

The Supreme Court in *Hill v. Lockhart* decided that, when a defendant waives an evidentiary trial and resolves his case with a plea of guilty or no contest, the *Strickland* prejudice prong must examine whether there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Hill's attorney had misinformed him about his eligibility for parole under the sentence that he had agreed to in a plea bargain. *Id*. at 60. Because there were no court or jury trial proceedings to examine to determine whether Hill had been prejudiced by his attorney's deficient performance, the *Hill* Court considered the only proceedings that had actually occurred in the case: the trial waiver that had resulted in

the plea of guilty. *See id*. at 59.[7] In subsequent decisions, the Supreme Court has indicated that there can be no presumption of reliability in the absence of any factual trial proceedings. *See, e.g., Flores-Ortega*, 528 U.S. at 483 ("Put simply, we cannot accord any 'presumption of reliability' to judicial proceedings that never took place.") (internal citation omitted). Thus, under circumstances in which a defendant has resolved his case by plea, the Supreme Court has recognized that the relevant inquiry is whether counsel's deficiency resulted in the defendant being denied the "entire judicial proceeding itself[.]" *Id.*

**B. This Case Falls Within the First Sphere**

Applying Supreme Court precedent to this case, I conclude that for two reasons appellant's complaint presents a claim of ineffectiveness that is subject to an ordinary *Strickland* prejudice analysis that focuses on the outcome of the proceedings.[8] First, as with

---

[7] In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination of whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that this discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. *Hill,* 474 U.S. at 59-60.

[8] This Court's past precedent has inconsistently addressed how to apply the prejudice prong when a defendant asserts deficient performance based on incorrect advice about whether he could be considered for a probated sentence. *Compare State v. Recer*, 815 S.W.2d 730, 731-32 (Tex. Crim. App. 1991) (holding that prejudice is shown with evidence that the defendant's decision to waive a jury trial would have been different if he had not been incorrectly advised about probation), *with Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012) (holding that prejudice is shown with evidence that the results of the proceeding would have been different had the defendant been properly advised about community supervision). This Court's precedent, therefore, does not resolve the instant appeal.

the ordinary *Strickland* prejudice standard, there was an entire trial that occurred that can be examined for its regularity and for any prejudicial impact caused by deficient performance. Given that there was an evidentiary trial in the instant case, this Court has an entire record of the proceedings that occurred so that we may discern whether the reasonably probable outcome of the proceedings would have been different with a jury trial that did not occur as compared to the bench trial that did occur. Such an approach would be consistent with the Supreme Court's observation in *Strickland* that, in order to warrant relief from a conviction or sentence due to counsel's errors in a trial proceeding, those errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The Supreme Court's decision in *Lafler v. Cooper* supports the view that an ordinary *Strickland* prejudice outcome analysis is the appropriate framework for resolving appellant's claim. 566 U.S. 156, 164 (2012). In *Cooper*, the Supreme Court considered the appropriate prejudice standard for a situation where a defendant has had an entire trial proceeding but complains that he would not have gone to trial if his attorney had properly conveyed the State's plea offer to him, which he claims he would have accepted rather than proceed to trial. *Id.* at 160. The Court explained,

> [H]ere the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea

offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 163-64. The prejudice standard discussed in *Cooper* considered the totality of the record, including the explanation that a defendant must show that the plea offer that was not conveyed to him was less severe than the judgment and sentence that was imposed against him at a trial. *Id.* Prejudice in *Cooper* did not focus solely on whether the defendant would have accepted a plea offer had it been conveyed to him. *See id.* Similar to *Cooper*, the appropriate prejudice standard here properly considers the totality of the record, including whether it is probable that the judgment and sentence that a reasonable jury would impose would be less severe than what was in fact imposed by the trial judge at the court trial.

Second, the cases on which this Court's majority opinion relies are procedurally distinguishable because they pertain to errors by counsel that deprived a defendant of an entire judicial proceeding, such as in cases where the defendants pleaded guilty or no contest, as compared to here where appellant pleaded not guilty and was found guilty at an evidentiary trial. In the instant case, the critical difference is that appellant was not completely denied a proceeding, as the defendant was in those cases on which this Court's majority opinion relies: *Hill v. Lockhart*, *Roe v. Flores-Ortega*, and *Lee v. United States*.

In *Hill*, there was no trial to examine for the reliability of the proceeding because all that had occurred in that case was a guilty plea. But, here, as in the punishment-phase court

trial in *Strickland*, there are trial proceedings whose outcome may be examined for its reliability.

*Roe v. Flores-Ortega* is similarly distinguishable. In that case, counsel failed to file a notice of appeal and thereby waived the defendant's right to an appeal without his consent. 528 U.S. at 484. Like the decision to plead guilty or proceed to trial, the decision to pursue an appeal belongs solely to a defendant. *Id*. at 477. Because, as in *Hill*, no presumption of reliability could be afforded to an appeal that never took place, proving prejudice required showing that, absent counsel's deficient performance, the appeal would have been made. *Id*. at 483-84.

*Lee v. United States* is also inapposite. In *Lee*, the Supreme Court addressed whether under the *Hill* consideration of the prejudice prong for situations in which a defendant has entirely waived a trial, a court should consider a defendant's likelihood of success at trial had he insisted on going to trial. *Lee*, 137 S. Ct. at 1966. Lee was an immigrant who was charged with narcotics offenses that, if convicted, would make him subject to deportation. Lee complained that counsel misadvised him that his convictions would not subject him to deportation. Based on the erroneous advice of counsel, Lee pleaded guilty to avoid deportation. As a result of counsel's error, Lee was both convicted and deportable. Although Lee had no viable defense at trial, and thus would have almost certainly been found guilty at trial and still subject to deportation, the Supreme Court held that the likelihood of success at trial alone does not govern the prejudice analysis under these circumstances where

a defendant waived his entire right to a trial. Because Lee may have rationally concluded that even a minuscule chance at acquittal and avoiding deportation was preferable to deportation plus a conviction, the decision to proceed to trial was still the proper focus of the prejudice inquiry where the entire trial was waived. This Court's majority finds that *Lee* undermines the rationale of our original opinion because it indicates that, even if appellant had virtually no chance of receiving probation from a jury, appellant's decision between a jury trial and a bench trial is the relevant inquiry for prejudice. However, the reasoning of *Lee* is inapplicable here. As noted, *Lee* simply addresses what factors should be considered when determining if a defendant has shown that he "would have insisted on going to trial" under the *Hill* prejudice standard. But *Hill*'s prejudice inquiry is crafted for situations where the defendant was deprived of an entire judicial proceeding. Here, appellant did insist on going to trial and was not deprived of an entire judicial proceeding. Thus, appellant's case is not one where counsel's error forfeited an entire judicial proceeding but rather an error which calls into question the reliability of the outcome. In this situation, *Strickland*'s ordinary prejudice inquiry is appropriate to determine if appellant received constitutionally deficient representation.

In sum, the cases on which this Court's majority opinion relies are inapplicable because those cases involve waivers of the entire trial that "arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." *Flores-Ortega*, 528 U.S. at 483. Because here there was an evidentiary court trial at which

appellant's claims were fully litigated before the trial judge, the prejudice determination must be made by considering the reliability of that judicial proceeding.

### III. This Case Should Not Be Remanded to the Court of Appeals

This Court's majority opinion holds that the court of appeals erred by failing to properly consider whether appellant was prejudiced with respect to his decision to waive his right to a jury trial, and it remands the case to the court of appeals purportedly for it to consider that matter. I disagree with this Court's remand order for two reasons.

First, remand is unnecessary in this case because the court of appeals already answered the precise matter that this Court now asks it to consider on remand. In its opinion, the court of appeals stated, "The trial court was not required to accept appellant's claim that he would have acted differently had he received correct advice. And even if the trial court accepted this claim, appellant was also required to establish that correct advice would have changed the result of the proceeding." *Miller*, 2015 WL 3456783, at \*4. Given that the court of appeals has already determined that the trial court was within its discretion to deny the motion for new trial because the judge was not required to believe appellant's claim that he would have chosen a jury trial if he had been correctly advised, this Court's remand of that precise question to the court of appeals is a waste of judicial resources and an unnecessary delay to the resolution of this case.

Second, the trial judge's decision not to sentence appellant at the lower range of punishment strongly suggests that it is not reasonably probable that appellant would have

been awarded a probated sentence if he had proceeded with the jury trial instead of waiving it. Appellant's sole complaint about his counsel's deficient performance is that the trial judge was prohibited from considering a probated sentence. But the jury most likely would not have awarded a probated sentence even though the law permitted them to consider it. When this Court has considered a defendant's ineffective assistance claim regarding the punishment phase of trial, the thrust of our analysis focuses on whether the attorney's error affected the sentence that was imposed in the case. *See Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005) (citing *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002)) (noting that when it is alleged that counsel performed deficiently at the punishment phase of trial, defendant must prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable penalty-phase verdict). In *Ex parte Cash*, under analogous circumstances in which the defendant claimed that his counsel's error had prevented the jury from considering probation, this Court observed that the jury's imposition of a forty-year sentence against Cash was a strong indicator that, even if it had been presented with the option of sentencing Cash to ten years or less and awarding him probation, the jury would not have exercised that option. *Id.* at 819.

As in *Cash*, it is not reasonably probable that a jury would have awarded probated sentences for appellant's convictions for aggravated sexual assault of a child and indecency with a child by contact based on the facts of the offense and the judge's imposition of

significant prison terms for both offenses.[9] The facts in this case involved the molestation of appellant's grandchild on several occasions. The complainant testified in extensive detail about the sexual abuse, and her testimony regarding the abuse was supported by the testimony of police investigators. The testimony showed that appellant would go into the complainant's room at night and would expose her to pornography before touching and rubbing her vagina. The complainant was around nine or ten years old at the time of these incidents. The complainant indicated that she was afraid to report the abuse because appellant paid her father's bills and she feared that her family would become homeless if appellant went to jail. The complainant also expressed how traumatic the abuse had been and that its consequences continued years afterwards. The trial court assessed twenty-two years in prison for the aggravated sexual assault offense, which was more than four times the statutory minimum of five years. There is nothing to suggest that the jury would have assessed a sentence at less than half of what the trial court assessed, given the egregious nature of the offense and the facts of the case. The trial court assessed a ten-year sentence for the offense of indecency with a child by contact, and the law would have permitted the jury to have recommended that this prison term be probated. The trial court's sentence, however, was five times the statutory minimum of two years in prison, and half of the maximum sentence permitted under the law. It is clear, therefore, that the trial court did not

---

[9] Appellant's conviction for aggravated sexual assault of a child carried a possible range of punishment from 5 years to 99 years or life, whereas his conviction for indecency with a child by contact carried a possible punishment range of 2 to 20 years. TEX. PENAL CODE §§ 22.021(a)(1)(B); 21.11(a)(1); 12.32, 12.33.

consider the offense worthy of a minimum term or a lighter sentence. There is nothing to suggest that the jury would have decided that a more lenient probated sentence was appropriate under these circumstances. From an objective viewpoint, I conclude that a reasonable jury would not likely have awarded appellant a probated sentence for these two sexual abuse offenses such that confidence in the actual outcome is undermined. I, therefore, agree with the court of appeals' conclusion that appellant failed to show that trial counsel's deficient performance prejudiced him.

I note further that under this Court's majority opinion, this Court departs from the familiar standard used to gauge prejudice from deficient performance. Here, appellant has expressed no complaint that counsel's deficient performance prejudiced the guilt or innocence phase of the trial that was conducted by the trial court that heard from the two complaining witnesses and six other witnesses. Yet, because this Court's majority opinion declines to evaluate the reliability of the outcome of the trial proceedings that did occur, appellant may receive a windfall of an entirely new trial. I conclude further that, even if this Court's majority opinion were correct that appellant's jury waiver was negatively impacted by counsel's mistaken advice that the trial court could consider a probated sentence, appellant complains, at most, about the punishment phase only. Any relief should be limited accordingly regardless of whether the prejudice standard looks to the waiver only or the outcome of the proceedings.

## IV. Conclusion

Appellant has not shown that there was a reasonable probability of changing the outcome of the proceeding in that he probably would not have obtained a probated sentence even if his attorney had properly advised him that the trial court could not consider him for that type of sentence. Accordingly, appellant has failed to establish ineffective assistance of counsel. I, therefore, would affirm the judgment of the court of appeals affirming the two sexual abuse convictions and sentences assessed against appellant at a bench trial.

Filed: May 23, 2018

PUBLISH