**Opinion filed September 28, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00313-CR

_____

## IVAN GARAY LOPEZ, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR21310**

### M E M O R A N D U M   O P I N I O N

Ivan Garay Lopez entered an open plea of guilty to two drug possession charges. This appeal concerns only one of those charges—the conviction arising from trial court cause no. CR21310—for possession of more than four grams but less than 200 grams of methamphetamine with intent to deliver in a drug-free zone.[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(d), .134(c) (West 2017). The

---

[1]In trial court cause no. CR21461, Appellant was indicted for delivery of a controlled substance in a drug-free zone. The jury assessed Appellant's punishment in cause no. CR21461 at confinement for a term of twenty-five years. However, the trial court granted Appellant's motion for new trial in cause no. CR 21461 and ordered a new trial on punishment.

jury assessed Appellant's punishment at confinement for a term of thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. In two issues on appeal, Appellant asserts that he received ineffective assistance of counsel. We affirm.

*Background Facts*

Early Police Detective Shawn Dibrell testified that he was conducting a narcotics investigation regarding methamphetamine distribution in parts of Brown County. His investigation led him to two individuals suspected of selling methamphetamine, Toni Killinger and Melissa Marshall. The investigation and information provided by a confidential informant helped officers identify Appellant as a distributor of methamphetamine.

On November 25, 2010, Detective Dibrell used an informant to set up a controlled buy. Detective Dibrell sent the informant to purchase $200 worth of methamphetamine from Killinger. Detective Dibrell testified that he parked his vehicle across the street to observe the transaction. After the informant arrived at Killinger's house, Appellant pulled up to the house in his vehicle, which had the name "Lopez" displayed across the rear window. Detective Dibrell observed Killinger approach Appellant's vehicle, stay there for about thirty seconds, and then immediately go get into the passenger seat of the informant's vehicle. After the buy was completed, Detective Dibrell followed the informant back to the office and requested patrol officers to stop Appellant's vehicle for identification purposes. The informant provided Detective Dibrell with the drugs, information, and recordings. The bags containing the drugs that the informant received were distinctly marked with a Superman logo.

Later that evening, Detective Dibrell set up another controlled buy based on the informant's knowledge that Killinger planned to acquire more drugs. Both Killinger and Marshall arrived in a different vehicle, and the informant purchased

another $200 worth of methamphetamine. Even though Appellant was not present during the second controlled buy, the baggies of methamphetamine that were purchased were imprinted with the same Superman logo. Subsequently, Detective Dibrell formulated a plan to shut down Appellant's operation.

Detective Dibrell received a tip that Appellant was coming into town on December 9 to deliver $1,000 worth of methamphetamine to Killinger. The tip indicated what time Appellant was expected to arrive, the specific address, the direction he would be traveling from, the car he would be driving, and the quantity of methamphetamine to be delivered. Officers were put in place, and Appellant arrived as scheduled and headed toward Killinger's house. Officer Amanda Williams and Officer Steven Means then initiated a traffic stop of Appellant's vehicle. The officers asked Appellant to step out of the vehicle so that they could conduct a weapons check after they noticed that Appellant had a screwdriver in the front seat. Shortly thereafter, Detective Dibrell arrived on the scene.

Detective Dibrell asked Appellant where he was going. In response, Appellant said that he was going to give a ride to a friend—a girl whose name Appellant did not know. Unable to extract any details from Appellant, Detective Dibrell confronted Appellant and told him that Detective Dibrell already knew that Appellant was going to Killinger's house with a "load of dope." Detective Dibrell asked Appellant if there was anything he wanted to surrender, and Appellant responded that he did not have anything. After Appellant initially refused consent to search the vehicle, a canine unit was called, which caused Appellant to become nervous. Appellant subsequently gave consent for the search of his vehicle. However, the officers elected to wait for the arrival of the canine unit before searching Appellant's vehicle.

Detective Dibrell testified that Deputy James Stroope of the Brown County Sheriff's Office arrived with his police dog. Detective Dibrell testified that the

police dog performed a free-air sniff around the vehicle and alerted by barking. After the dog alerted on the vehicle, Detective Dibrell and other officers searched the vehicle for approximately thirty minutes without success. Officers then transported the vehicle back to the sheriff's office to search the vehicle in a covered garage with better lighting. Detective Dibrell testified that he informed Appellant of his right to leave and that Appellant was about to leave with his girlfriend when the methamphetamine was found.

Using the screwdriver that officers found in the front seat, Deputy Stroope unscrewed the stereo and found twenty-seven small bags containing methamphetamine. The bags contained a little more than nine and one-half grams of methamphetamine. Officers arrested Appellant for possession of methamphetamine.

Subsequently, Appellant told a jailer that he wanted to speak with Detective Dibrell. After being informed of his *Miranda*[2] rights, Appellant admitted to "selling or bringing methamphetamine to Brown County" approximately fourteen times over a four-month period. Appellant told Detective Dibrell that he delivered roughly $1,000 worth of methamphetamine each time and generally delivered around $5,000 to $6,000 worth of methamphetamine per month. Appellant stated that he had only delivered the methamphetamine to two people. Based on Appellant's statements, Detective Dibrell estimated that Appellant had delivered approximately seven ounces of methamphetamine over that period. Appellant estimated that he had delivered approximately a "key" of methamphetamine, which is equal to approximately 2.2 pounds of methamphetamine.

Following his arrest, Appellant was charged with possession of a controlled substance with intent to deliver in a drug-free zone. The indictment alleged that, on

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

4

or about December 9, 2010, Appellant knowingly possessed, with intent to deliver, between four and two hundred grams of methamphetamine within 1,000 feet of Early Elementary School in Early, Texas. As stated above, Appellant entered an open plea of guilty to the offense, and ultimately, the jury sentenced Appellant to confinement for thirty-five years.

*Procedural History*

This appeal has a somewhat unusual procedural history. The trial court sentenced Appellant on November 2, 2011. However, Appellant did not immediately appeal his conviction. On March 19, 2015, Appellant filed an application for a writ of habeas corpus based upon allegations that his trial counsel rendered ineffective assistance of counsel. In the application, Appellant alleged seven instances of ineffective assistance of counsel, including a claim that his trial counsel had failed to inform him of the proper procedures for preserving appellate rights. In compliance with an order from the Texas Court of Criminal Appeals, the trial court held a hearing on Appellant's application for a writ of habeas corpus. After the trial court submitted its findings, the Court of Criminal Appeals granted Appellant permission to file an out-of-time appeal.

Subsequently, Appellant filed a motion for new trial. He also alleged ineffective assistance of trial counsel in his motion for new trial. The trial court held a hearing on Appellant's motion for new trial on September 1, 2016. The trial court denied the motion for new trial. This appeal followed.

*Analysis*

Appellant presents two issues on appeal, asserting that his trial counsel rendered ineffective assistance of counsel. In his first issue, Appellant asserts that trial counsel was ineffective for failing to file a motion to suppress the fruits of an illegal canine search of Appellant's vehicle. As set forth below, this is a contention that Appellant litigated at the hearing on his application for writ of habeas corpus

and in his motion for new trial. In Appellant's second issue, he asserts that trial counsel was ineffective for failing to adequately inspect Appellant's cell phone prior to trial.

In order to establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* at 694; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Prine*, 537 S.W.3d at 117 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

Appellant premises his first issue on the contention that officers performed an illegal canine search. He contends that the canine search was illegal because the canine officer "orchestrated the dog's entry into the vehicle." We note that a canine "sniff" of the exterior of a vehicle is not a "search" for Fourth Amendment purposes. *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005). As set out later in this opinion, a canine sniff of the interior of a vehicle can be a search in some instances. Appellant asserts that the canine alert from inside his vehicle constituted an illegal search and that his trial counsel should have filed a motion to suppress the search.

Because Appellant presented the contention that he asserts in his first issue in his motion for new trial, we must determine whether the trial court erred in denying

the motion for new trial. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018). "An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous and arbitrary." *Id.* "A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling." *Id.* "This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling." *Id.* "The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Id.*

Appellant and his trial counsel testified at the hearing on Appellant's motion for new trial. Appellant testified that the dog never alerted to the outside of the car because Deputy Stroope opened the vehicle's door and waved the dog inside. Appellant additionally testified that he would not have pleaded guilty to the charge if he would have known that a motion to suppress could have been filed.

Appellant's trial counsel testified that he "looked closely at the police reports and the videos, statements of law enforcement . . . [and] the investigation of [Appellant] that they had conducted over the course of a period of, I think, a few weeks." After reviewing all of the evidence, trial counsel formulated a strategy to stress Appellant's youth and lack of a criminal record so "that a jury would have mercy on him and not send him to the penitentiary." Specifically, the strategy revolved around Appellant taking responsibility for his conduct, pleading guilty, and going to the jury for punishment. Trial counsel also testified that he does not like to file frivolous motions that waste the trial court's resources.

At the hearing on the motion for new trial, the trial court took judicial notice of the previous hearings conducted in the case, including the hearings on Appellant's application for writ of habeas corpus. Appellant's trial counsel testified at a habeas

7

hearing that his analysis of the case and evidence led him to believe that the stop of Appellant's vehicle was lawful. When questioned about the canine search, trial counsel testified that he did not remember anything being wrong with the search. He testified that his "objective" was to keep Appellant out of prison and that he did not think a motion to suppress would have been granted. On cross-examination, trial counsel testified that his trial strategy was for Appellant to take responsibility for his actions by pleading guilty in the hope that such action would persuade the jury to assess a lenient punishment, emphasizing Appellant's young age and nonexistent criminal history. Trial counsel also testified that the officers' reports detailed facts that he believed gave them probable cause to stop Appellant.

The Honorable Sam Moss,[3] the assistant district attorney that prosecuted Appellant, also testified regarding Appellant's trial counsel's representation. Regarding the viability of a motion to suppress, Judge Moss testified that there was not a motion to suppress that Appellant could prevail on. Judge Moss testified: "I think [trial counsel] did everything he could under a terrible set of facts for his client and him to deal with, when you're in a county with juries who don't look favorably on people who sell drugs."

At the conclusion of the habeas hearing, the trial court determined that Appellant's trial counsel denied him his right to a direct appeal by terminating his representation without notice to the trial court or Appellant. Therefore, the trial court concluded that counsel was ineffective in failing to timely file a notice of appeal and that Appellant was prejudiced as a result. However, the trial court did not find that trial counsel was ineffective for failing to file a motion to suppress. Based upon the trial court's recommendation, the Court of Criminal Appeals granted Appellant an opportunity to file an out-of-time appeal.

---

[3]Judge Sam Moss is now the judge of the Brown County Court at Law. Therefore, we will refer to him as Judge Moss.

A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Ex parte Jones*, 473 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Counsel is not required to engage in the filing of futile motions. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991); *Ex parte Jones*, 473 S.W.3d at 854. To satisfy the *Strickland* test and prevail on an ineffective-assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show that a motion to suppress would have been granted. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998). Therefore, an appellant must develop facts and details of the search sufficient to conclude that the search was invalid. *Id.* at 957. We note that Appellant has litigated his claim of an illegal canine search on two occasions before the same trial court and the same trial judge that would have ruled on a motion to suppress had trial counsel originally filed one. After both the habeas hearing and the motion for new trial, the trial court declined to find that a motion to suppress based upon a claim of an illegal canine search would have been successful.

Appellant bases his claim of an illegal canine search on the dash-cam video of the canine search and a line of federal cases holding that a dog's instinctive jump into a car does not violate the Fourth Amendment as long as the canine enters the vehicle on its own initiative and is neither encouraged nor placed into the vehicle by law enforcement. *See, e.g.*, *U.S. v. Sharp*, 689 F.3d 616, 618–20 (6th Cir. 2012). With respect to the video, Appellant contends that it depicts Deputy Stroope prompting the canine to enter the vehicle's open window "by pointing/gesturing directly at the window."[4] However, the video does not unequivocally establish that Deputy Stroope prompted the canine to enter the vehicle through the open window. When Deputy Stroope directed the dog's attention to the open window, the dog

---

[4]Contrary to Appellant's assertion at the hearing on the motion for new trial, Deputy Stroope did not open a door to the vehicle prior to the canine's entry into the vehicle.

immediately jumped through it into the car. Deputy Stroope did not testify at trial or at the two subsequent hearings. Accordingly, the record is silent as to whether his hand gesture was an instruction to the canine to enter the car.

Moreover, even if Deputy Stroope prompted the canine to enter the vehicle, Appellant consented to the canine's entry into the vehicle. As we noted previously, Appellant gave officers consent to search his vehicle after the canine unit was called. Furthermore, as Deputy Stroope approached Appellant's vehicle with the canine, Appellant gave the officers instructions on how to open the doors to his vehicle. We conclude that the recording establishes that Appellant unequivocally consented to a search of his vehicle.

Thus, there are multiple bases upon which the trial court could have concluded that a motion to suppress premised on the canine search would have been futile. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for new trial with respect to the allegation that counsel was ineffective for not challenging the canine search. *See Riley*, 378 S.W.3d at 457. We overrule Appellant's first issue.

In his second issue, Appellant contends that his trial counsel was ineffective for failing to investigate and request a pretrial inspection of text messages stored on Appellant's cell phone. Appellant asserts that this failure caused his trial counsel to "advance a defense theory and a version of the facts in opening statement that was contradicted and undermined" by the text-message evidence. Appellant did not raise this claim of ineffective assistance of counsel in his motion for new trial or in his habeas hearing.

Generally, ineffective-assistance-of-counsel claims raised for the first time on appeal will fail to satisfy the first prong of the *Strickland* test because the record is "inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App.

10

2005). However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she [or he] did." *Id.*

Trial counsel must make an independent investigation of the facts of the case. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). However, the duty to investigate is not absolute since trial counsel may "make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017).

In his opening statement, Appellant's trial counsel described the inception of Appellant's drug involvement. Trial counsel stated that Appellant met some individuals at school who told Appellant: "You can buy this package right here, here in Waco Texas, it's already divided up, you don't have to even do anything. You don't have to touch it. I mean, the actual drugs. And basically, you're a mule." Appellant's trial counsel argued that it is from these individuals that Appellant learned that the drug business was "like buying and selling stock." Appellant then found a person in the market for methamphetamine, and he started bringing it to Brown County from Waco.

During trial, Detective Dibrell testified that he seized Appellant's cell phone to confirm that Appellant was communicating with Killinger, which would establish that Appellant was traveling to Killinger's house on December 9. The State sought to introduce individual photographs of the text messages Appellant received as evidence of his involvement in distributing drugs to other individuals. Detective Dibrell's investigation revealed that, contrary to Appellant's previous admission,

Appellant had conducted business with more than just two customers. The evidence showed that Appellant received text messages from five different people regarding methamphetamine.

While Appellant's trial counsel did not address the investigation issue raised in this appeal during either the writ hearing or the hearing on the motion for new trial, he did address it during the punishment phase of trial. When the State sought to offer the photographs of Appellant's cell phone, his trial counsel requested a recess to review the evidence. He stated that a recess was necessary because the photographs the State furnished to him during discovery were small and illegible. Trial counsel advised the trial court that he mistakenly assumed that his copies of the photos were the same as the State's copies and would therefore be illegible as well. After reviewing the photos, Appellant's trial counsel lodged numerous objections, some of which were successful.

Assuming without deciding that trial counsel was deficient for not requesting legible copies of the text messages, Appellant has not shown prejudice. To prove ineffective assistance of counsel, an appellant "must show that prejudice occurred with a probability 'sufficient to undermine confidence in the outcome.'" *Ex parte Rogers*, 369 S.W.3d 858, 862–63 (Tex. Crim. App. 2012) (quoting *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)). Regarding alleged ineffective assistance during the punishment phase of trial, an appellant must "prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict." *Id.* at 863 (quoting *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005)). "It is not enough to show that trial counsel's error had some conceivable effect on the outcome of the punishment assessed." *Id.*

As noted previously, Appellant contends that trial counsel's alleged deficiency caused trial counsel to advance a theory in his opening statement that was

contradicted by the text-message evidence offered at trial. The text messages established that Appellant was dealing a large amount of methamphetamine to more than two people. However, this evidence was cumulative of other evidence admitted prior to the admission of the text messages. Specifically, the jury had already received evidence that Appellant freely admitted to delivering a "key" or 2.2 pounds of methamphetamine to Brown County, but he only admitted to delivering approximately 140 grams to Killinger and her associates. Detective Dibrell testified that he "believed that the additional weights [Appellant] was referring to went somewhere else." The jury could have feasibly believed that Appellant was selling methamphetamine to other individuals based on this inconsistency. Additionally, the jury heard testimony that Appellant was selling methamphetamine to pay for college. The jury could have considered that more customers would further Appellant's alleged business purpose. In light of the other incriminating evidence, we cannot say that the text-message evidence significantly undermined trial counsel's strategy for Appellant to admit his guilt and seek forgiveness.

The jury sentenced Appellant to confinement for a term of thirty-five years for his conviction for possession of methamphetamine with intent to deliver in a drug-free zone in an amount that was greater than four grams but less than 200 grams. The punishment range for this first-degree felony was "for life or for any term of not more than 99 years or less than 5 years" and a potential fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2011); *see* HEALTH & SAFETY § 481.112(d). The drug-free zone enhancement increased the minimum term of confinement to ten years and doubled the potential fine. HEALTH & SAFETY § 481.134(c). This is a serious offense. *See Sneed v. State*, 406 S.W.3d 638, 643 (Tex. App.—Eastland 2013, no pet.). Under these circumstances, Appellant has not shown that but for trial counsel's allegedly deficient performance, the jury would have reached a more favorable verdict on punishment. To hold otherwise would be

13

an impermissible exercise in conjecture and speculation. *See Cash*, 178 S.W.3d at 818–19. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

September 28, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.;
Gray, C.J., 10th Court of Appeals[5];
and Wright, S.C.J.[6]

Willson, J., not participating.

---

[5]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.