

**NUMBER 13-18-00257-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GILBERTO ESCAMILLA,                                     **Appellant,**

**v.**

THE STATE OF TEXAS,                                       **Appellee.**

### On appeal from the 107th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

Appellant Gilberto Escamilla was convicted for theft by a public servant in an amount greater than $200,000, a first-degree felony. *See* TEX. PENAL CODE ANN. § 31.03 (West, Westlaw through 2017 1st C.S.). By two issues, Escamilla argues that: (1) the

associate judge did not have the proper authority to preside over his case; and (2) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

On December 6, 2017, Escamilla was indicted for theft in an amount exceeding $200,000 (count one) and theft by a public servant in an amount exceeding $200,000 (count two). *See id.* The alleged offenses occurred between 2008 and 2017 while Escamilla was the Food Services Administrator for the Darrell B. Hester Juvenile Justice Center (Juvenile Center). During this time period, an audit revealed that Escamilla purchased $1,252,578.72 in fajita meat for the Juvenile Center using Cameron County funds; however, instead of using the fajita meat in the Juvenile Center, Escamilla allegedly sold the meat to individuals and restaurants, retaining all of the proceeds for himself.

On December 12, 2017, Judge Benjamin Euresti, the presiding district judge in Cameron County, recused himself from the case. On December 13, 2017, Judge Manuel Bañales was appointed to preside over the case. However, on October 3, 2017, Judge Euresti signed an Order of Referral, referring cases from eight district courts to Associate Judge Louis Sorola. *See* TEX. GOV'T CODE ANN. § 54A.007 (West, Westlaw through 2017 1st C.S.) ("An order of referral may . . . set forth general powers and limitations or authority of the associate judge applicable to any case referred."). Therefore, on April 9, 2018, the case was called for announcement before Associate Judge Sorola. Escamilla waived his right to a jury on both the guilt-innocence and punishment phases of trial. Escamilla's written waiver was signed by his counsel and the prosecutor and approved by Associate Judge Sorola. Associate Judge Sorola ordered a pre-sentence investigation and ordered

2

an ankle monitor to be placed on Escamilla.  On April 20, 2018, before Judge Bañales, Escamilla was admonished, waived his rights again, and then pleaded guilty to count two. Count one was dismissed, but Judge Bañales found Escamilla guilty on count two.  Judge Bañales sentenced Escamilla to fifty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division, ordered him to pay a $10,000 fine, and ordered him to pay restitution in the amount of $1,251,578.72 to Cameron County, in addition to court costs.

On May 11, 2018, Escamilla filed a motion for new trial claiming he received ineffective assistance of counsel.  On June 8, 2018, a hearing was held on Escamilla's motion, during which Judge Bañales declared:

> In this case, the defendant appeared with his attorneys, and on two different sets of questions, one before Judge Sorola and the other before me, you told us that he knew what he was doing, and that he was freely and voluntarily waiving his rights.  And the Court accepted those representations.  Those came straight from the defendant himself.  I find that there is no violation of the defendant's rights, that the proof does not meet the *Strickland* standards, and the motion for new trial is denied.

This appeal followed.

## II. ORDER OF REFERRAL

In his first issue, Escamilla argues that Associate Judge Sorola did not have authority to accept Escamilla's written waiver of his right to jury trial.

### A. Standard of Review and Applicable Law

In general, an objection must be timely raised before the trial court to be preserved for appeal.  *See* TEX. R. APP. P. 33.1.  This is also true for constitutional objections: "[c]onstitutional issues must be properly raised in the trial court or they are waived on appeal." *In re M.J.M.L.*, 31 S.W.3d 347, 352 (Tex. App.—San Antonio 2000, pet. denied);

3

*see* TEX. R. APP. P. 33.1(a); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) ("[A]lmost all error—even constitutional error—may be forfeited if the appellant failed to object.").

## B. Discussion

Escamilla asserts that Associate Judge Sorola did not have the authority to preside over his case because: (1) the Order of Referral was not signed by two-thirds of the Cameron County judges; (2) the Order of Referral became void when Judge Euresti recused himself; and (3) there was no plea agreement in this case. However, at no point before, during, or after the bench trial did Escamilla raise an objection based on the above complaints concerning Associate Judge Sorola's authority to preside over the case. When Escamilla appeared before Associate Judge Sorola on April 9, 2018, he made no objections to Associate Judge Sorola presiding over the acceptance of his written jury waiver.[1] Therefore, Escamilla has failed to preserve this issue for appeal. *See* TEX. R. APP. P. 33.1; *Fuller*, 253 S.W.3d at 232 (concluding that even constitutional errors must be preserved by raising timely objections to the trial court); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (same).

Moreover, assuming without deciding that Escamilla preserved error, he fails to demonstrate any reversible error. *See* TEX. R. APP. P. 44.2. The only function performed by Associate Judge Sorola in this case was to accept Escamilla's written waiver of jury trial, order an ankle monitor be placed on Escamilla, and order a pre-sentence investigation. At the hearing on April 20, 2018, Judge Bañales re-admonished Escamilla

---

[1] Escamilla filed a motion for new trial alleging ineffective assistance of counsel; however, Escamilla did not assert that his counsel should have objected to Associate Judge Sorola.

4

concerning his guilty plea. The court further reviewed the written waiver with Escamilla. Escamilla once again pleaded guilty, acknowledging that he did so freely and voluntarily, and that he understood his rights. It was Judge Bañales that ultimately accepted Escamilla's plea and assessed Escamilla's punishment. Escamilla does not demonstrate how Associate Judge Sorola's actions affected his substantial rights or otherwise constituted reversible error. *See id.* We overrule Escamilla's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Escamilla argues that he received ineffective assistance of counsel because his counsel failed to: (1) develop and present mitigation evidence for the punishment phase of his trial; and (2) "investigate" Judge Bañales before recommending that Escamilla waive his right to jury trial and have Judge Bañales assess punishment. Accordingly, Escamilla argues that the trial court abused its discretion by failing to grant his motion for new trial on the ground of ineffective assistance of counsel.

**A. Applicable Law**

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005).

To sustain a claim of ineffective assistance of counsel, an appellant must prove two factors: (1) that counsel made errors so serious that counsel was no longer functioning as "counsel" under the Sixth Amendment, and (2) that the errors prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively

5

demonstrate the alleged ineffectiveness. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Ineffective assistance claims are subject to a strong presumption of reasonable trial strategy which an appellant must overcome. *Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc); *Strickland*, 466 U.S. at 689.

Ordinarily, in order to satisfy the requirement of proving that the errors prejudiced the defense, an appellant must show a reasonable probability that the proceedings would have been different but for counsel's error. *See Strickland*, 466 U.S. at 689; *Ex parte Bryant*, 448 S.W.3d at 39; *Thompson*, 9 S.W.3d at 812. But in the specific scenario where an attorney's allegedly deficient performance affected the defendant's decision to waive a jury trial, the prejudice prong is different:

> a defendant meets the prejudice prong of his ineffective assistance of counsel claim by demonstrating that he would have opted for a jury if his attorney had correctly advised him . . . . He does not have to show that the likely outcome of the jury trial he waived would have been more favorable than the court trial he had.

*Miller v. State*, 548 S.W.3d 497, 498 (Tex. Crim. App. 2018) (op. on reh'g); *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**B. Analysis**

Escamilla first contends that his two trial attorneys were ineffective for failing to present mitigation evidence. At the motion for new trial hearing, twelve relatives and friends of Escamilla testified in his support. Most of them testified that they would have recommended probation if they had been called, but none of them had been called to testify during trial. According to Escamilla, the testimony of these witnesses undermines

the confidence of the judgment, and failing to call them during sentencing constituted deficient performance by his counsel.

We first note that, contrary to Escamilla's assertions, his trial counsel filed a "Memorandum in Mitigation of Punishment" for the trial court to consider. Furthermore, at the hearing on the motion for new trial, one of Escamilla's attorneys gave the following explanation for filing the memorandum:

[Question]: And why did you do that memorandum?

[Answer]: I did it to summarize the background of Mr. Escamilla, his family, his experiences in the county, to give both myself and the Court a better idea of who Mr. Escamilla is.

[Question]: And was it your hope that he would get a lower sentence based on that work that you had done?

[Answer]: It was.

Concerning the witnesses, Escamilla testified at the hearing as follows:

[Question]: All right. And I really have some fairly specific things that I want to ask you about. Let me deal with you first on this question of asking witnesses to come in. Is it true what they've said, that you were reluctant for witnesses to be involved in your case at that time?

[Answer]: Yes. The first time I came in, I did not have all the support that I have with me right now.

[Question]: All right. Now, the question is, we are going to discuss what the lawyers, what guidance the lawyers gave you . . .

. . .

[Question]: Did either one of them ever just insist and tell you, you're going to have to have a mitigation case and witnesses on your behalf?

[Answer]: They did discuss it, but we didn't bring my family, my immediate family, which is my wife and my children. Some of my kids were in school, and I thought it best that we did not

7

because to put them through more than what they were going through as of right now [sic].

Escamilla admitted that his trial counsel discussed bringing in family witnesses, and yet he opposed the idea. Furthermore, Escamilla's trial counsel prepared and filed a mitigation memorandum in an effort to reduce Escamilla's sentence; that memorandum summarized the testimony of Escamilla's family. Therefore, we conclude that Escamilla's counsel was not deficient regarding the development and presentment of mitigation evidence. *See Strickland*, 466 U.S. at 687.

Escamilla also argues he received ineffective assistance of counsel because his counsel did not properly investigate Judge Bañales before advising Escamilla to waive his right to a jury trial. According to Escamilla, he would have opted for a jury had he been properly advised. At the hearing on the motion for new trial, Escamilla's counsel admitted that at some point after the sentencing, he learned that Judge Bañales allegedly had a reputation for being "the toughest sentencing Judge in the State of Texas." Additionally, two other attorneys testified at the motion for new trial. One of the attorneys testified that he always tries first-degree felony cases to a jury, if possible. The other attorney testified that he would never try a first-degree felony case before Judge Bañales because he is "harsh." Escamilla's attorneys admitted that they suggested he waive his right to a jury trial. One of his attorneys testified as follows concerning his suggestion to waive a jury trial:

> That recommendation was based on several things. It was based on some treatment that we received from this Judge earlier in this case, particularly at the bond hearing where my client had what I believed to be a relatively low bond. At that time, when after he was indicted, a second charge was added, and the District Attorney was asking that his bond be increased to $200,000. This Judge at that time did not opt to increase that bond at all. Not to the $200,000, and not anything above what it was set already. So

8

we had primarily received some good treatment. I had also discussed this case with other lawyers and their opinions, and it was my opinion at the time that going to a judge would be preferable perhaps than going to a jury.

Escamilla's other trial counsel gave the following explanation for recommending trying the case before Judge Bañales instead of a jury:

> I didn't do any internet research on Judge Bañales. I went based upon—I gave [Escamilla's other trial counsel] advice based upon my experiences with Judge Bañales. Some of those experiences include representing criminal defendants before him when he was elected, before he became a visiting Judge and Senior Status. One case in particular in the Nueces County Courthouse, I recall I had a defendant who was indigent and couldn't pay money back. And Judge Bañales was lenient to that defendant. I wish I could remember the name and the case, it's been 15 years now. But I conveyed those—that history, my personal history of Judge Bañales on those cases, I had another case in Kingsville where he served in Kingsville, where I had a young man who was smuggling drugs through the checkpoint and it was a State level case. And Judge Bañales had this notoriety for being hard on drug cases. And in that particular case, the young man was a college student who was helping himself, who was doing all he could and had made a mistake. And Judge Bañales showed leniency in that case. So—and I was aware that many defense lawyers in the Criminal Bar, they fear Judge Bañales's sentencings. And I was aware of that.

We conclude that, given the totality of the circumstances, Escamilla's trial counsel was not ineffective in advising Escamilla to waive his right to a jury trial. *See id.* at 689. Even though Escamilla's counsel admitted that he did not conduct any internet research on Judge Bañales, both of Escamilla's attorneys gave reasonable explanations for their trial strategy. One of the attorneys believed that it was worth trying the case before Judge Bañales because of the nature of the case and the judge's previous denial of the State's request to increase the bond. The other attorney conceded that though many other defense attorneys were afraid of trying a case before Judge Bañales, he was also aware of cases in which Judge Bañales had allegedly shown leniency to criminal defendants.

9

Given these facts, Escamilla's counsel was not deficient in their failure to investigate Judge Bañales. *See id.* at 687.

Even assuming without deciding that Escamilla's counsel was deficient by failing to properly investigate Judge Bañales, we cannot conclude that Escamilla suffered prejudice as a result. *See Miller,* 548 S.W.3d at 502. Escamilla has not shown that he would have opted for a jury trial but for his counsel's allegedly deficient performance. One attorney testified that he would never try a criminal case before Judge Bañales based on his "harsh" reputation; however, Escamilla's counsel admitted to already being aware of Judge Bañales's reputation without any investigation. Escamilla's counsel also explained why, given Judge Bañales's history and the seriousness of Escamilla's offense, they believed it was wise to forego a jury trial. Therefore, Escamilla has not demonstrated a reasonable likelihood that he would have opted for a jury trial had his counsel performed an investigation. *See id.*

The trial court did not abuse its discretion by denying Escamilla's motion for new trial on the ground of ineffective assistance of counsel. We overrule Escamilla's second issue.

## IV. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
23rd day of May, 2019.