**Reversed and Remanded and Majority and Concurring Opinions filed January 28, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00372-CR

### HOLLY LYNN HARRISON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 368th District Court
Williamson County, Texas
Trial Court Cause No. 16-0276-K368**

### MAJORITY OPINION

In this appeal, we consider whether a defendant is entitled to a new plea hearing and trial after her defense counsel failed to inform her of a comment by the trial judge that, had the defendant known about it, would have prompted her to ask to change her plea, ask for a jury trial, and maintain her innocence.[1] We reverse

---

[1] This case was transferred to our court from the Austin Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise

and remand.

Appellant Holly Harrison appeals her conviction for felony injury to a child by omission and tampering with evidence. As a result of a plea agreement, appellant pleaded no contest to injury to a child and guilty to tampering with evidence without an agreed recommendation from the State on punishment. The trial court sentenced appellant to the maximum punishment for injury to a child, 20 years in prison, and two years in prison for tampering with evidence. Appellant contends on appeal that she received ineffective assistance of counsel under *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), and suffered prejudice under *Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018), because her counsel failed to inform her about the trial court's comment.[2]

## *Background*

Appellant owned an in-home daycare. While she was working alone, a five-month-old baby stopped breathing during his nap. Upon discovering the baby's condition, appellant did not immediately call 911. Instead, she called an employee, who told her to call 911. Appellant then called the other parents and asked them to pick up their children. When the employee arrived at the daycare 10-15 minutes after the initial call, appellant still had not called 911. The employee insisted again on appellant calling 911, and she finally did. Appellant destroyed phone logs showing phone calls made and text messages sent before she called 911.

Pursuant to the plea agreement, appellant pleaded no contest to injury to a child by omission and guilty to tampering with evidence. The trial judge initially

---

inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

[2] Neither our court nor the Austin Court have addressed whether *McCoy* or *Miller* apply under the circumstances presented here. Appellant also argues that the trial court did not consider the full range of punishment. Because we conclude *McCoy* and *Miller* require reversal, we do not reach this issue.

said he would find appellant guilty of injury to a child. Defense counsel replied that deferred adjudication was available for that offense, so the judge did not make a finding of guilt and reset the case for a sentencing hearing one week later.

After appellant made her plea, defense counsel, Elizabeth Whited, went to the trial judge's chambers where the trial judge was with the court coordinator. Whited asked the judge whether he wanted her to provide caselaw indicating that deferred adjudication was within the permissible range of punishment for injury to a child. The judge replied, "A deferred on an injury to a child case where there's a dead baby? I don't think so." Whited then consulted with co-counsel, Brian Jones, and they decided not to tell appellant about the comment.

After the sentencing, appellant retained new counsel and filed a motion for new trial with a supporting affidavit. She attested, "The possibility of deferred adjudication was the ONLY reason I went to the judge for punishment. . . . Had I known that the Judge was not going to consider deferred adjudication at my sentencing hearing, I never would have gone to him for punishment. . . . To be clear, I would have insisted on going to trial had I known about the trial judge's statement." The trial judge recused himself. The presiding judge granted a hearing on the motion.

The trial judge, appellant's two trial attorneys, another attorney, and the court coordinator testified at the hearing. Three of the witnesses were present when the judge made the referenced statement. They and the judge all confirmed that it happened.[3] The judge said that if he had a chance to do it over again, he would not make the comment and the comment was "[a]bsolutely not" appropriate. He conceded that the comment, "[i]f taken seriously," would show that he failed to

---

[3] The judge testified that he did not think the wording was exact, but it was "the same type of reference."

consider the full range of punishment. But, according to him, it was a "smart-aleck comment," and he did consider the full range of punishment.

Whited testified that receiving deferred adjudication was the "ultimate goal" and "paramount" to appellant in deciding to accept the plea agreement. Whited was "very surprised" about the trial judge's comment and thought it was inappropriate, but did not tell her client about it. She said the strategy was to avoid going before an "unknown" judge and to avoid the admission at trial of appellant's six hours of statements made to the police.

Jones testified that Whited texted him after she heard the comment, "We're fucked." Even though Jones and Whited discussed the possibility of filing a motion to withdraw the plea or for a recusal, they did not discuss this possibility with their client. Jones agreed that the possibility of deferred adjudication was "a big deal" and "the goal." Jones stated that the strategy was to keep the same trial judge because he "was still the best option" and it was "[b]etter the devil you know than the devil you don't." Jones testified if this happened again, he "definitely would" inform his client.

The presiding judge found the sentencing judge to be a credible witness, believed his testimony that he considered the full range of punishment, and denied the motion for new trial. As to the ineffective assistance claim, the presiding judge concluded appellant failed to show that a favorable ruling on the motion would have changed the outcome of the case because (1) she had no right to withdraw her plea, and (2) she did not show there was a reasonable probability that a jury would have assessed a more lenient punishment under *Strickland v. Washington*, 466 U.S. 668 (1984).

*Discussion*

Appellant contends the trial court abused its discretion in denying the motion for new trial because her attorneys failed to advise her of the sentencing judge's comment, thereby depriving her of the right to ask to withdraw her plea, ask for a jury trial, or move to recuse the sentencing judge. We review the denial of a motion for new trial for an abuse of discretion and reverse only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). We must view the evidence in the light most favorable to the trial court's ruling. *Id*. We may not substitute our own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id*. The ruling is within the zone of reasonable disagreement when there are two reasonable views of the evidence. *Id*.

The Sixth Amendment guarantees a defendant in a criminal case the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland*, 466 U.S. at 684–86. Ordinarily, an appellant claiming ineffective assistance of counsel must prove that counsel's representation fell below an objective standard of reasonableness and the defendant suffered prejudice from such deficiency. *Strickland*, 466 U.S. at 687–88, 694; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Our review of defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

I.     **Was counsel's representation below an objective standard of reasonableness?**

A defendant generally must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

5

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). However, some decisions belong to the defendant and are not a matter of trial strategy. *McCoy*, 138 S. Ct. at 1508; *Turner v. State*, 570 S.W.3d 250, 274 (Tex. Crim. App. 2018). These decisions include whether to plead guilty or waive the right to a jury trial. *McCoy*, 138 S. Ct. at 1508; *Turner*, 570 S.W.3d at 274. "These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *McCoy*, 138 S. Ct. at 1508 (emphasis in original). Accordingly, the Sixth Amendment guarantees that a defendant "has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt" is in the defendant's best interest.[4] *Id*. at 1505.

Defense counsel in the *McCoy* case conceded his client was guilty of triple murder in a bid to avoid the death penalty. *Id*. at 1506. McCoy "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id*. at 1505. The Supreme Court held that counsel violated his client's Sixth Amendment rights by overriding his client's autonomy in deciding whether to admit guilt. *Id*. at 1512.

In *Turner*, the Court of Criminal Appeals held that the defendant was entitled to a new trial under *McCoy*. *Turner*, 570 S.W.3d at 277. The court noted that the "factual similarities between [*Turner*] and *McCoy* are striking." *Id*. at 275. In both cases, defense counsel's strategy was to concede guilt to avoid a death

---

[4] Under *McCoy*, when "a client's autonomy, not counsel's competence, is in issue," we do not apply the *Strickland* ineffective assistance framework. *Id*. at 1510–11. This type of error is structural and requires a new trial without a prejudice or harmless error analysis. *Id*. at 1511. But appellant does not argue that she is entitled to a new trial outside of the *Strickland* framework. She argues that her counsel's representation fell below an objective standard of reasonableness under *McCoy* but this court should analyze prejudice under *Miller*. 548 S.W.3d at 498. Under either analysis, appellant is entitled to reversal.

sentence. *Id.* Both times, the defendant disagreed with that strategy and maintained his innocence. *Id.*

The *Turner* court addressed in tandem the interrelated issues of whether *McCoy* applied and whether Turner had preserved error on his *McCoy* complaint. *Id.* at 275–76. Although a defendant is not expected to object with the precision of an attorney, the court held that a defendant cannot remain silent before and during trial and raise a *McCoy* complaint for the first time after trial. *Id.* at 276. In so holding, the court stated, "[a] defendant makes a *McCoy* complaint with sufficient clarity when he presents 'express statements of [his] will to maintain innocence.'" *Id.* (quoting *McCoy*, 138 S. Ct. at 1509). The court focused on whether the defendant made his desire to maintain his innocence known to his defense counsel. *Id.* At issue was "[d]oes the record show that [the defendant], in a timely fashion, made express statements of his will to maintain his innocence?" *Id.* Because there was "no question that [the defendant] wanted to maintain his innocence," error was preserved. *Id.*

The *Turner* court did not address what would happen if an attorney withheld information from the client relevant to whether the client would want to withdraw her plea and maintain her innocence. That issue is squarely before us.

Appellant filed her motion for new trial and supporting affidavit two days after she learned of the trial judge's statement, "[A] deferred, on an injury to a child case, with a dead baby? I don't think so." She attested that "[t]he possibility of deferred adjudication was the ONLY reason [she] went to the judge for punishment." But her attorneys decided not to tell her about the statement or advise her that she could ask to withdraw her plea or ask for a jury trial. Appellant attested, "Had I known that the Judge was not going to consider deferred adjudication at my sentencing hearing, I never would have gone to him for

7

punishment. . . . To be clear, *I would have insisted on going to trial had I known about the trial judge's statement*." (Emphasis added). Appellant's affidavit thus establishes that if she had known about the judge's comment, she would have asked to withdraw her plea and asked for a jury trial.

The record further shows that counsel understood the seriousness of the judge's comment and the impact that learning this information would have had on their client. After the judge made the referenced comment, Whited texted "We're fucked" to her co-counsel Jones. Whited testified she was "very surprised" and "shocked" by the comment, it was improper, and she thought the "comment could have indicated, yes, that [the judge] was not considering the full range of punishment." She testified that Jones "calmed [her] down" and they talked about the possibility of filing a motion to recuse the judge and withdrawing the plea. Whited said appellant was in "a very fragile state" but acknowledged appellant was "very involved" in her case and contributed to the strategic decisions made by the trial team. Whited said appellant had "been very angry at times, anxious, a lot of emotions" and it was "very hard for her to plead" no contest. Whited admitted that it was ultimately appellant's choice to "have all [the] facts before she [got] exposed to punishment."

Jones testified that he spoke with Whited after the judge made the comment and Whited "appear[ed] concerned." Jones also said that telling appellant about the comment would subject her to "more stress" and he saw "no value in stressing her out." He conceded that appellant did not know the judge and the ultimate decision of who decides punishment belonged to appellant. He also said, "we were very concerned about how she was going to react" and "we just didn't think we wanted to put her in that position and we just did not believe that the judge was serious about the comment." Jones agreed that in hindsight, "he definitely would" advise

8

his client of such a comment if he were in this situation again.

Whited and Jones both testified respectively that deferred adjudication was the "ultimate goal," "paramount," "a big deal," and "the goal." However, they were concerned about appellant's potential reaction to the comment in her "fragile state."

On this record, we conclude that counsel was aware that appellant likely would have changed her position had she known about the judge's comment. Appellant's emphasis on the importance of deferred adjudication, along with counsel's recognition that appellant was "very involved" in her sentencing hearing and it was "very hard" for her to plead no contest, lead us to conclude that counsel knew at the time of the judge's statement that appellant likely would have asked to change her plea, asked for a jury trial, and maintained her innocence had she known about the comment. *See id.*

We conclude that appellant preserved error on her complaint. She objected at her first opportunity after learning about the trial judge's comment. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) (holding that in some instances, a defendant may preserve a sentencing issue by raising it in a motion for new trial and noting, "[t]he requirement that an objection be raised in the trial court assumes that the appellant had the opportunity to raise it there"); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013) ("The general rule is that a party must first complain in the trial court in order to preserve a complaint for appellate review. . . . But [the] operation [of the rule] may depend on the party's having an opportunity to comply with the rule."); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (permitting appellant to raise his objection for the first time in a motion for new trial since "appellant had no opportunity to object to the trial

court's action until after that action was taken").[5]

As to counsel's trial strategy, Whited said they wanted to avoid going before an "unknown" judge and to avoid the admission at trial of six hours of statements appellant made to the police. Jones stated that the strategy was to keep the same trial judge because he "was still the best option" and it was "[b]etter the devil you know than the devil you don't." As the *McCoy* court noted, trial counsel cannot override a client's objection to a guilty plea. 138 S. Ct. at 1509. Disputes with counsel over "concession of the defendant's commission of criminal acts" are not "strategic disputes . . . ; they [are] intractable disagreements about the fundamental objective of the defendant's representation." *Id.* at 1510. Accordingly, defense counsel's strategy of going to the trial judge as the "best option" for punishment is not relevant to our assessment of error under *McCoy*. In accordance with *McCoy*, the decision not to tell appellant about the judge's statement was not a strategic choice. That decision deprived appellant of the right to ask to change her plea, ask for a jury trial, and maintain her innocence.

We conclude the proper application of *McCoy* under these facts is to ask whether appellant was deprived of the opportunity to ask to withdraw her plea or for a jury trial, which was her right. *See id.* at 1511 ("[A]n admission [of a client's guilt over her objection] blocks the defendant's right to make the fundamental choices about [her] own defense."). The trial court certainly had the authority to allow appellant to withdraw her plea and her jury trial waiver. *See Saldana v. State*, 150 S.W.3d 486, 490 (Tex. App.—Austin 2004, no pet.) (noting under Texas's "liberal practice" concerning the withdrawal of a guilty plea, a defendant may

---

[5] We agree with the concurrence that appellant never argued she was entitled to a new trial without a showing of prejudice under *McCoy*. However, appellant raised the issue of her counsel's deficiency in depriving her of the right to take steps to change her plea, have a jury trial, and maintain her innocence.

10

withdraw her plea as a matter of right until the judgment has been pronounced or the case has been taken under advisement and after that time, the trial court has discretion to allow withdrawal of the plea); *see also Marquez v. State*, 921 S.W.2d 217, 221 (Tex. Crim. App. 1996) ("[W]hen an accused validly waives trial by jury, a subsequent request by the accused to withdraw the jury waiver is addressed to the discretion of the trial court."). We believe appellant's showing that she was deprived of the *right to ask* is enough to show a deficiency of counsel under *McCoy*.

We conclude that the record shows appellant adequately preserved her ineffective assistance claim and defense counsel were deficient when they failed to tell appellant of the judge's statement implicating his ability to consider the full range of punishment, thus depriving appellant of the opportunity to maintain her innocence. Accordingly, counsel's representation fell below an objective standard of reasonableness.

We do not hold today that *McCoy* is an ineffective assistance case that fits within the parameters of *Strickland*. To the contrary, the Supreme Court held that when "a client's autonomy, not counsel's competence, is in issue, we do not apply" the *Strickland* ineffective assistance framework. 138 S.Ct. at 1510-11. Under *McCoy*, a defendant is not required to show she suffered prejudice from her counsel's deficiency. *Id.* at 1511. However, appellant does not argue she was not required to show prejudice and relies on *McCoy* only to show that her counsel's performance was deficient. We agree that it was. Because appellant contends that she suffered prejudice by her counsel's deficiency, we will analyze whether she is correct.

## II.    What prejudice standard applies?

To demonstrate prejudice under *Strickland*, a defendant ordinarily must

11

show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The Court of Criminal Appeals recently recognized an exception to this general rule and held that "a defendant meets the prejudice prong of his ineffective assistance of counsel claim by demonstrating that he would have opted for a jury if his attorney had correctly advised him that he was ineligible for probation from the trial court." *Miller*, 548 S.W.3d at 498.

In *Miller*, the defendant waived a jury trial and pleaded not guilty after his attorney incorrectly advised him that he was eligible for probation from a judge. *Id*. The trial court found the defendant guilty and sentenced him to prison time. *Id*. The defendant sought a new trial based on ineffective assistance of counsel. *Id*. The trial court denied the motion for new trial, and the court of appeals affirmed. *Id*.

In deciding that a defendant shows prejudice when he demonstrates he would have opted for a jury if his attorney had correctly advised him, the high court analyzed "how to measure prejudice when the attorney's deficient performance—bad advice about probation eligibility—could not have affected the outcome of the defendant's trial but could only have affected the defendant's decision to waive a jury." *Id*. at 499. The court noted that the Supreme Court has held that "the correct measure of prejudice for an attorney's deficient performance that might have caused a defendant to waive a judicial proceeding is whether there is a reasonable likelihood that the defendant would have opted for the proceeding if his attorney had performed adequately." *Id*. at 502.

The Court of Criminal Appeals analyzed three Supreme Court cases in reaching its conclusion, *Hill*, *Flores-Ortega*, and *Lee*:

[I]f the deficient performance might have caused the waiver of a

proceeding, the defendant's burden is to demonstrate a reasonable probability that the deficient performance caused the defendant to waive a judicial proceeding that he was otherwise entitled to have. The focus then is on the defendant's decision making. In *Lee*, where the attorney wrongly advised the defendant that he would not be deported if he pleaded guilty, the error "affected Lee's understanding of the consequences" of his plea, so the prejudice issue was "whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial." In *Flores–Ortega*, where the defendant waived his right to appeal, the prejudice issue was whether he would have appealed but for his attorney's bad advice. In *Hill*, where the defendant claimed his attorney gave him bad advice about parole, the prejudice issue was whether the defendant still would have pleaded guilty if his attorney had correctly advised him about parole.

The likelihood of a better outcome from a waived or forfeited proceeding is not the correct prejudice standard because "we cannot accord any 'presumption of reliability' to judicial proceedings that never took place."

*Id*. at 499–500 (citing *Lee v. United States*, 137 S. Ct. 1958, 1962, 1965–66 (2017), *Roe v. Flores–Ortega*, 528 U.S. 470, 484 (2000), and *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985)). As the Court of Criminal Appeals noted, "proving a better outcome from a proceeding never had is so speculative as to be unworkable." *Id*. at 501.

The State argues that *Miller* does not apply here based on the timing—appellant had already accepted a plea agreement and waived her right to a jury trial when the trial judge made the objectionable comment. According to the State, because of this timing, appellant did not have a clear right to withdraw her plea or elect a jury trial and appellant did not have a clear right to require the trial judge to recuse himself. But if we were to agree with the State, our holding would run afoul of *Miller*: the question is not whether the outcome would have been different; the question is whether the attorney's deficient performance would have affected the

defendant's choice. *Id*. at 499. Here, the deficient performance occurred after appellant entered her plea but before trial. We do not agree that appellant's right to a remedy hinges on *when* she knew of counsel's deficient performance. We conclude that *Miller* applies because appellant was deprived of the opportunity to ask to withdraw her plea and to ask for a jury trial. We turn to whether appellant suffered prejudice.

The State argues that appellant did not suffer prejudice under *Miller* because appellant obtained "that for which she bargained"—the possibility of deferred adjudication and avoiding a jury. But this is not the proper inquiry. We must ask first whether counsel's omission deprived appellant of *the opportunity to ask* and second whether appellant would have asked if given the opportunity. Because appellant demonstrated that if she had all the information, she would have asked to withdraw her plea and for a jury trial, she has demonstrated prejudice under *Miller*.

We conclude for these reasons that the trial court abused its discretion in denying the motion for new trial. We turn to the proper remedy.

The *Miller* court reversed the court of appeals' judgment affirming the trial court and remanded the case to the court of appeals for an analysis of prejudice and thus did not discuss the proper remedy. *Id*. at 502. However, in keeping with *Miller*, because appellant has shown but for her counsel's errors, she would not have pleaded no contest to injury to a child and would have asked for a jury trial, we conclude the proper remedy is to reverse the trial court's judgment and remand the case for a new plea hearing and trial. This holding is also consistent with the Supreme Court's holding in *Lee*—in that case the court concluded that Lee should have been afforded an opportunity to reject his plea agreement based on the knowledge that accepting the plea would "lead to deportation." 137 S. Ct. at 1969. Here, the proper remedy is to give appellant an opportunity to reject her plea

14

agreement and opt for a jury trial.

## *Conclusion*

We sustain appellant's issues complaining of ineffective assistance of counsel. We reverse the judgment of the trial court and remand this case for a new plea hearing and trial.


/s/     Frances Bourliot
        Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer. (Jewell, J., concurring, joined by Zimmerer, J.).

Publish — TEX. R. APP. P. 47.2(b).