In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00474-CR
NO. 09-18-00475-CR
_____

**TIMOTHY AARON SWINNEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Newton County, Texas**
**Trial Cause Nos. ND 7248, ND 7289**

**MEMORANDUM OPINION**

A jury convicted Timothy Aaron Swinney on indictments charging him with committing two aggravated assaults, both of which involved using a deadly weapon.[1] In the punishment phase of the trial, in both cases, Swinney waived his

---

[1]The indictments do not involve the same alleged victim but the cases were consolidated and tried before the same jury. The judgments from the trial bear Trial Court Cause Numbers ND-7248 and ND-7289.

1

right to have the jury assess punishment. Following a sentencing hearing, the trial court sentenced Swinney to serve an eight-year sentence in Trial Court Cause Number ND-7248 and a two-year sentence in Trial Court Cause Number ND-7289.[2]

Swinney raises three issues in his appeal. In issue one, Swinney argues he is entitled to a new trial in Cause Number ND-7248 because the charge the trial court submitted to the jury failed to include a proper application paragraph, which he argues was needed, that explained to the jury that it should find him not guilty should the jury have reasonable doubt about whether he acted in self-defense. In issue two, Swinney argues the charge misstated the law on his claim of self-defense. In issue three, Swinney complains he received the ineffective assistance of counsel during the trial because the attorney who represented him gave him the wrong advice about whether the trial court could consider putting him on probation. As explained below, we conclude that Swinney's issues lack merit, so we affirm.

## Background

The complaints Swinney raises in his appeal concern his convictions on felonies that include affirmative findings that reflect he used a deadly weapon. Under Texas law, when a defendant is found guilty of aggravated assault that involved his

---

[2]*See* Tex. Penal Code Ann. §§ 12.33(a), 22.02(a), (b).

use of a deadly weapon, the conviction is punishable as a second-degree felony.[3] And as relevant to Swinney's arguments, when the factfinder finds the defendant used or exhibited a deadly weapon in committing the felony, Texas law prohibits the trial court (but not the jury) from placing the defendant on probation.[4]

Following a jury trial, the jury found Swinney guilty of assaulting two individuals at a party Swinney had at his home in November 2016. In Cause Number ND-7248, Swinney's indictment alleges that Swinney intentionally, knowingly, and recklessly caused bodily injury to *Darryl*[5] by shooting Darryl in the abdomen with a shotgun. In Cause Number ND-7289, Swinney's indictment alleges that Swinney intentionally and knowingly threatened *Donald* with imminent bodily injury by pointing a shotgun at Donald's face. In both cases, the indictments also allege that Swinney used or exhibited a deadly weapon, a shotgun, when committing the alleged assaults.

Eleven witnesses testified in the guilt-innocence phase of Swinney's trial. Swinney, as well as Darryl and Donald, testified in the trial. Generally, the testimony

---

[3]*Id*. § 22.02(b).

[4]Tex. Code Crim. Proc. Ann. art. 42A.054(b).

[5]To protect the privacy of the victims whose names are in the indictments, we identify them by their initials. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

3

in the trial (viewed in the light most favorable to the verdicts) shows that in November 2016, several people were outside Swinney's house drinking beer and partying. At some point, Darryl walked away from the party to urinate near where Swinney kept his dog. When Darryl returned to the others, Swinney accused Darryl of having urinated on his dog. Darryl denied doing so, but Swinney refused to believe him. Darryl asked Swinney if he wanted him to leave. Swinney said he did.

As Darryl was walking to his car, Donald approached Swinney and asked why he was "bullying" Darryl. Donald and Swinney began arguing. Darryl turned around to walk away, and Swinney claims he heard someone "call [him] the n-word[.]" At that point, Swinney walked to a shed, got a shotgun, and left the shed while chambering a shell. As Swinney approached Darryl, he pointed the shotgun at him and asked if Darryl had called him the n-word. Then Swinney shot Darryl at a point-blank range.

Swinney then turned to Donald, who was sitting in the backseat of his truck. Pointing his shotgun at Donald, Swinney "asked [Donald] if [he] called him the n-word[.]" Donald denied that he did and began pleading with Swinney for his life. About five minutes later, Swinney put the gun down. Donald left and drove to the hospital in Orange, Texas, because he knew Darryl had gone there to be treated for a gunshot wound to his abdomen.

4

Swinney testified in his own defense during the trial. Yet when he testified, he never denied that he shot Darryl. Instead, Swinney claimed he did not shoot Darryl intentionally, claiming the gun "went off by accident[.]" Swinney did, however, deny ever pointing the gun at Donald. That said, he also agreed that while talking to Donald, he was holding the gun. Additionally, Swinney testified he retrieved the shotgun because he feared for his own safety, explaining "[i]t was three on one. I mean, anything could happen."

The day after the shooting occurred, Swinney gave police a statement. The prosecutor read the statement into evidence in presenting the State's case. In the statement, Swinney said that he saw Darryl "running at me out of the corner of my eye[,]" and that is when he turned toward him while holding the shotgun, it "somehow" fired.

At the close of the evidence, in the case that involved the assault against Darryl, the trial court (without request) provided the jury with instructions on self-defense. In pertinent part, the charge states:

> Upon the law of self[-]defense[,] you are instructed that a person is justified in using force against another (or others) when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's (or others') use or attempted use of deadly conduct.

> The use of force against another (or others) is not justified in response to verbal provocation alone.

5

A person is justified in using deadly conduct against another (or others):

(1) if he would be justified in using force against the other; and

(2) if a reasonable person in the defendant's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(a) to protect himself against the other's use or attempted use of unlawful deadly force[.]

In the brief that Swinney filed in his appeal, he argues the charge fails "to include an application paragraph instructing the jury to acquit if they held a reasonable doubt as to whether or not the defendant was acting in self-defense under the circumstances." That said, Swinney also acknowledges the charge instructs the jury that, if it did not believe Swinney intentionally, knowingly, or recklessly caused bodily injury to Darryl by shooting him in the abdomen, or if it had "a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" Since Swinney's first two issues concern the adequacy of the charge, we address those issues first before addressing his third issue, in which he complains that his attorney misled him about whether the trial court could, if he were convicted, consider placing him on probation.

6

Charge Error

Under Texas law, the trial court must provide the jury with a written charge setting forth the law that applies to the defendant's case.[6] In issue one, Swinney argues the charge in the case in which the State alleged he assaulted Darryl[7] was defective because it failed to inform the jury to acquit him should it find the State failed to establish that he did not fire the shotgun while defending himself.

Reviewing an issue claiming charge error "involves a two-step process."[8] First, "we determine whether the jury instruction is erroneous."[9] Second, if error occurred, we "analyze that error for harm."[10] Since Swinney argues the errors in the charge occurred for the first time in appealing from the judgment, we may order a new trial only if the record establishes that, as a result of the error, Swinney did not receive a fair and impartial trial.[11] Stated another way, when the defendant fails to object to the charge at trial based on the same alleged error that he is arguing in his appeal, the defendant must show the error caused egregious harm.[12]

---

[6]Tex. Code Crim. Proc. Ann. art. 36.14.
[7]Trial Court Cause Number ND-7248.
[8]*Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).
[9]*Id.*
[10]*Id.*
[11]*See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).
[12]*Id.*

The function of the charge "is to inform the jury of the applicable law and guide [the jurors] in its application to the case[.]"[13] Under the Code of Criminal Procedure, the trial court must provide the jury with a written charge that sets forth the law that applies to the defendant's case.[14] Thus, "[t]his law requires the trial [court] to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence."[15] A proper charge contains instructions to inform the jury about law the jury must consider in reaching its verdict and contains instructions to guide the jury in how law applies to the evidence presented in the defendant's trial.[16]

While we question whether the evidence in the trial raised a valid claim under Texas law for using self-defense, the trial court instructed the jury on the defense anyway.[17] When trial courts include instructions in a charge on a defense and have not been prompted to do so by one of the parties in the case, the law that applies to the defendant's case includes the defense the trial court chose to include in its

---

[13]*Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (cleaned up).
[14]Tex. Code Crim. Proc. Ann. art. 36.14.
[15]*See Walters v. State*, 247 S.W.3d 204, 208-09 (Tex. Crim. App. 2007).
[16]*See Fraser v. State*, 593 S.W.3d 883, 888 (Tex. App.—Amarillo 2019, pet. ref'd).
[17]We note that under Texas law, an individual may not use force "in response to verbal provocation alone[.]" *See* Tex. Penal Code Ann. § 9.31(b)(1).

8

charge.[18] Consequently, when the charge instructs the jury on self-defense, the charge must properly instruct the jury on the law by providing instructions describing the defense correctly.[19] So, in Swinney's case, the record shows that by charging the jury on self-defense, trial court "assumed a duty to deliver a proper charge" that described the defense.[20]

In Swinney's case, the trial court assumed the duty—but failed—to include an appropriate application paragraph in the charge explaining how the law of self-defense applied to the evidence the jury heard during Swinney's trial.[21] Here, the charge has no application paragraph explaining to the jury what it should do should it find or have a doubt about whether Swinney acted in self-defense when he shot Darryl. For that reason, we conclude that charge error occurred.

The lack of an application paragraph, however, is not the only error that infects the trial court's charge. The abstract instruction on self-defense also misstates Texas law, as it varies materially from the relevant statute that defines self-defense.[22]

---

[18]*Mendez v. State,* 545 S.W.3d 548, 553 (Tex. Crim. App. 2018); *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013).

[19]*Id.*

[20]*Mendez*, 545 S.W.3d at 553.

[21]*See id.*; *Barrera v. State*, 982 S.W.2d 415, 416-17 (Tex. Crim. App. 1998); *see also* Tex. Penal Code Ann. § 2.03(d); *Mendez*, 545 S.W.3d at 554; *Allen v. State*, 253 S.W.3d 260, 263 (Tex. Crim. App. 2008).

[22]*See* Tex. Penal Code Ann. § 9.31(a) (defining when individuals may defend themselves from others).

In its charge, the trial court's instruction on self-defense suggests that an individual may use force in response to another's use or attempted use of *deadly conduct*.[23] But Texas' law of self-defense is broader, as the statutory definition allows a jury to find that a person was justified in using force when and to the degree the person reasonably believed force was immediately necessary to protect against the other's use or attempted use of *unlawful force*.[24] Thus, the charge the trial court delivered in Swinney's case restricted the scope of the defense from the scope of the defense available to a defendant under the law. We also find that this mistake also constitutes charge error.

While the charge on self-defense is infected with error, Swinney must still establish that the errors in the charge resulted in egregious harm, given a record showing that he did not properly object to the errors we have identified in the charge.[25] To show that egregious harm occurred, the record "must disclose *actual* rather than theoretical harm, and the error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive

---

[23]The charge the trial court gave the jury provides: "A person is justified in using deadly conduct against another (or others): . . . when and to the degree he reasonably believes the deadly force is immediately necessary: . . . to protect himself against the other's use or attempted use of *unlawful deadly force*[.]" (emphasis added).

[24]*Id*. (emphasis added).

[25]*Marshall v. State*, 479 S.W.3d at 843.

theory."[26] When evaluating a record for egregious harm, we consider the entire record, meaning the charge, the contested issues that were raised by the evidence in the trial, the weight of the evidence that proves the defendant's guilt, the arguments the parties made to the factfinder in the trial, and any other information that is relevant to deciding whether the record supports a conclusion that the errors that exist in the charge caused egregious harm.[27]

In the appeal, the only charge errors Swinney complains about concern the instruction and the lack of application paragraph as those errors relate to the charge the trial court delivered, which instructed the jury on self-defense. Under Texas law, self-defense is a confession-and-avoidance defense, which means the defendant must generally admit engaging in the conduct involving the crime on which he was tried to raise a fact issue on the defendant's argument claiming he acted in self-defense.[28] Here, Swinney did not admit to knowingly, intentionally, or recklessly firing the shotgun.[29] Instead, in the trial, he testified the shotgun went off accidently. He also denied having intentionally pulled the trigger of his gun.

---

[26]*Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (cleaned up).
[27]*Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020).
[28]*Id.*
[29]*See Juarez v. State*, 308 S.W.3d 398, 405-06 (Tex. Crim. App. 2010).

When the record shows the defendant denied guilt, the defendant's own testimony is inconsistent with an argument the defendant acted in self-defense.[30] To be clear, a defendant cannot generally claim to have acted in self-defense while, at the same time, denying that he committed the crime made the subject of his trial.[31]

Nothing in the record before us shows that Swinney fired the shotgun because he thought doing so was immediately necessary to protect himself against another's use of unlawful force.[32] Swinney never admitted during his testimony that he intentionally, knowingly, or recklessly discharged the gun. And while Swinney testified Darryl called him the n-word, even if the jury chose to accept Swinney's testimony that Darryl did so, words alone are not a provocation of the type that authorizes the defendant to avail himself of deadly force.[33] The record also shows that in the trial court, Swinney's attorney never relied on a claim that he shot Darryl in self-defense, although he now asserts he relied on the defense as the theme of his

---

[30]*Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986).

[31]*Jordan*, 593 S.W.3d at 343.

[32]*See Preston v. State*, 756 S.W.2d 22, 24-25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) ("If the accused, by his own testimony or by other evidence, raises the issue of self-defense, he is entitled to an instruction and charge *so long as* such evidence shows the complainant, by words or acts, caused the accused to reasonably believe he was in danger *and* to reasonably believe deadly force was immediately necessary.").

[33]*See* Tex. Penal Code Ann. § 9.31(b); *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018).

case during the trial. For example, in closing argument, Swinney's attorney argued that the shooting was accidental. And while it's true that Swinney's attorney mentioned self-defense briefly in closing argument, he did so by suggesting that Swinney was defending himself by retrieving the shotgun, not that he fired the gun in self-defense.

For these reasons, we conclude the errors in the charge, which Swinney points out in his brief, did not cause any egregious harm. Issues one and two are overruled.

Ineffective Assistance of Counsel

In Swinney's third issue, he argues that the attorney who represented him in the trial misled him about whether the trial court (as opposed to the jury) could consider placing him on probation, should he be convicted of committing the assaults. Since both of the judgments the trial court signed in Swinney's cases include deadly weapon findings, the trial court could not elect to probate Swinney's sentence.[34] Swinney argues that his attorney's advice deprived him of his right to effective assistance of counsel. We agree with Swinney that the record shows his attorney misled him about whether the trial court could consider probation. Yet, for the reasons fully explained below, we also find the current record is insufficient to

_____

[34]*Compare* Tex. Code Crim. Proc. Ann. art. 42A.054 (restricting when trial courts may place a defendant on probation), *with* Tex. Code Crim. Proc. Ann. art. 452A.056 (placing separate restrictions on when juries may award probation).

13

establish that if Swinney's attorney had given Swinney correct advice—that only the jury could consider placing him on probation—he would have elected to have the jury assess punishment in lieu of the election he made, which was to allow the trial court to assess his punishment.

To establish that a defendant received ineffective assistance of counsel, the defendant must establish two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[35]

Texas law tracks the standards the United States Supreme Court adopted in *Strickland*.[36] And when the Court of Criminal Appeals has applied that standard to circumstances that involved the advice of counsel about probation, it has explained that to prove prejudice, the defendant must demonstrate in his appeal that: "(1) the defendant was initially eligible for probation; (2) counsel's advice was not given as a part of a valid trial strategy; (3) the defendant's election of the assessor of punishment was based upon his attorney's erroneous advice; and (4) the results of

---

[35]*Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[36]*Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017) (quoting *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Cim. App. 2012)).

14

the proceeding would have been different had his attorney correctly informed him of the law."[37]

Here, the record shows that Swinney raised his ineffective assistance of counsel claim for the first time in his appeal. For instance, he did not file any post-judgment motions, including a motion claiming that he received ineffective assistance. In cases where the defendant seeks to raise a claim of ineffective assistance for the first time in his appeal, the record in the trial court is frequently insufficiently developed to allow the defendant to demonstrate whether, had the defendant been correctly advised, the results of the proceedings would have been different.[38] One of the reasons it's difficult to prove prejudice on an undeveloped record is that the standard that applies to reviewing an ineffective assistance of counsel claim requires the record to show that the defendant would have elected to have the jury assess his punishment had his attorney given him the correct advice on the laws as they relate to whether the factfinder in the punishment could consider probation.[39]

Generally, the defendant's testimony claiming he would have done something differently requires the trial court, as the factfinder on the motion for new trial, to

---

[37]*Id.*

[38]*Id.*

[39]*Miller v. State*, 548 S.W.3d 497, 502 (Tex. Crim. App. 2018).

decide whether to believe the defendant's testimony. Here, the trial court was never asked to decide what Swinney might have done had he been given different advice. Moreover, Swinney did not file an affidavit or testify in the trial court that he would have elected to have the jury assess his punishment had his attorney advised him that only the jury could consider placing him on probation. Furthermore, Swinney cannot show on this record that the advice his attorney gave him was the sole reason he chose to go to the trial court for punishment, or whether instead, other considerations existed that played a role in that decision.[40]

We conclude the record in the trial court shows that Swinney cannot meet his burden to show the outcome in his trial would have been different had he been correctly advised that only the jury could consider placing him on probation if the jury found him guilty and found he used a deadly weapon when committing the assaults.[41]

For the reasons explained above, we overrule Swinney's third issue.

---

[40]*See State v. Recer*, 815 S.W.2d 730, 732 (Tex. Crim. App. 1991) (reversing court of appeals ruling awarding the defendant a new trial when the record did "not reflect that [the defendant] went to the trial judge for sentencing *solely* because of her attorney's erroneous impression that the trial judge could set aside the affirmative finding and grant her probation") (emphasis added).

[41]*Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (explaining that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective") (cleaned up); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (same).

## Conclusion

Because Swinney failed to meet his burden to establish the errors in the charge resulted in egregious harm and failed to meet his burden of establishing the outcome in his case would have differed had he been given correct advice about probation, we overrule his issues. Accordingly, the judgments in Trial Court Cause Numbers ND-7248 and ND-7289 are

      AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 5, 2020
Opinion Delivered January 27, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.