

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00314-CR

Joe Angel **MARTINEZ**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR7047
Honorable Christine Del Prado, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: November 26, 2025

AFFIRMED

Appellant Joe Angel Martinez, Jr. contends he received ineffective assistance of counsel and appeals his conviction for failure to stop and render aid after being involved in an accident resulting in injury. We affirm.

### BACKGROUND

The State indicted Martinez for failing to stop and render aid after he hit a man riding a scooter with his car; his punishment was enhanced by two prior felony convictions. *See* TEX.

TRANSP. CODE ANN. § 550.021. After the jury found Martinez guilty of the offense, the court assessed Martinez's punishment at twenty-five years' imprisonment. Martinez did not file a motion for new trial, and this appeal ensued.

**APPLICABLE FACTS**

An officer and a detective with the San Antonio Police Department testified at trial. First, Officer Amanda Brown testified she arrived within five minutes of the accident and was the first officer on the scene. Officer Brown saw the victim sitting on the ground holding a towel to his head to absorb the bleeding from an injury he sustained while riding a scooter when he was hit by a car. The victim's family also informed Officer Brown that the person driving the car who hit the victim, later identified as Martinez, left the scene but stopped two to three blocks away and had his hazard lights on. According to Officer Brown, she had been told the victim's family had actually stopped Martinez's car by placing other scooters in front of it, he did not stop voluntarily or provide any information to assist the victim. Officer Brown was wearing a body camera the night of the accident, and the trial court admitted the recording into evidence without objection and played it for the jury. The trial court did not require the court reporter to transcribe the audio portion of the recording, and neither counsel requested the court reporter to do so.

While playing Officer Brown's body-camera recording and after admitting a photograph of the accident scene, Officer Brown explained traffic was very light at the time of the accident and Martinez could have "pulled over on the side" and stopped near the accident rather than drive away. In addition to portraying the accident scene, Officer Brown's recording shows one of the victim's family members quickly approaches Officer Brown upon her arrival and tells her that the victim was hit in the middle of the street and the driver "took off" but was stopped down the street.

Detective Matthew Pierson also testified for the State. Upon arriving at the accident scene and immediately being told that someone was hit by a car and the driver fled, Detective Pierson proceeded about two blocks down the street when he saw a car stopped with its hazard lights on and people waving him down. Detective Pierson was also wearing a body camera, and the trial court admitted the recording into evidence without objection and played it for the jury.

While playing the video, the State informed the trial court that part of the video was muted based on a prior agreement made with defense counsel. As seen in the recording and explained by Detective Pierson, three men claiming to be family members of the victim waved Detective Pierson down as he approached Martinez's stopped car. Because they were agitated and visibly upset, it was difficult to understand what they were saying other than indicating Martinez, who was standing nearby, was the driver involved in the accident. For Martinez's protection and to deescalate the situation and speak to the men and Martinez about what happened, Detective Pierson placed Martinez in the back of his patrol vehicle.

Martinez admitted he was driving the car that hit the victim. He claimed that while driving in the middle lane, the victim, who was riding a scooter, came across the street towards his car unexpectedly, and Martinez's car struck him. In the video, Martinez explains that after he hit the victim, he attempted to turn back but could not because he had a red light and another car was passing him. Instead, he pulled over and stopped his car. Martinez states he was not trying to flee the scene like the men suggested. He also expresses to Detective Pierson that the men were threatening to assault him before Detective Pierson arrived.

While Martinez was in the back of Detective Pierson's patrol vehicle, the victim's family described the accident, stating they were on scooters emerging from a blocked off alley, and upon entering the street, the victim experienced problems with his scooter's breaks that caused him to

stop in the street, but Martinez continued moving forward in his car, struck the victim, and drove away. The recording shows Detective Pierson walking around and assessing the damage to Martinez's car, and several photos, showing the extensive damage to his car, were admitted into evidence. Detective Pierson also noticed a couple of scooters on the street in front of Martinez's car. According to Detective Pierson, the men explained they chased Martinez down while he was fleeing the accident scene until he stopped, then they placed their scooters in front of Martinez's car to prevent him from leaving. Detective Pierson acknowledged the possibility that Martinez had already stopped his car before the men showed up on the scooters. Detective Pierson also explained Martinez could not have made a legal U-turn at the accident scene, but stated that because traffic was light, Martinez could have stopped in "multiple" areas after hitting the victim. Because Martinez stopped two blocks from the accident scene, Detective Pierson opined Martinez did not stop at the scene of the accident.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Martinez contends counsel's performance fell below an objective standard of reasonableness when he failed to object to alleged hearsay contained within the testifying officer's and detective's body-camera recordings played for the jury. Martinez argues that had the jury not heard the hearsay statements contained in the recordings, the jury would have likely acquitted him. Thus, he argues he received ineffective assistance of counsel.

"To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). A defendant must show that: (1) his trial counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466

U.S. 668, 687–88, 694 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (applying Strickland to an ineffective assistance claim under the Texas Constitution).

"A [reviewing court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. "For an appellant to defeat this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (internal quotation marks and alterations omitted). "Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Id*. "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Id*. (internal quotation marks omitted). "A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance." *Id*. "Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Id*.

A defendant bears the burden of proving both elements by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. A court need not address both elements of an ineffective assistance of counsel claim when the defendant makes an insufficient showing as to either element. *Strickland*, 466 U.S. at 697. When evaluating an ineffectiveness claim, courts consider the totality of the evidence. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010).

**APPLICABLE LAW TO HEARSAY**

Generally, hearsay evidence is not admissible. *See* TEX. R. EVID. 802. Rule 803, however, provides exceptions to the rule against hearsay regardless of whether the declarant is available as a witness. *See* TEX. R. EVID. 803. Specifically, an excited utterance, or "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused[,]" qualifies as an exception and will not be excluded as evidence by the rule against hearsay. TEX. R. EVID. 803(2).

A statement is an excited utterance if, at the time the statement was made, the declarant was still dominated by the emotions, excitement, fear, or pain that was caused by the startling event or condition. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). In making excited-utterance determinations, we consider the following non-dispositive factors: (1) whether the "exciting event" is startling enough to evoke a truly spontaneous reaction from the declarant; (2) whether the reaction is quick enough to avoid the possibility of fabrication; (3) whether the resulting statement sufficiently "relates to" the startling event to ensure the reliability and trustworthiness of the statement; and (4) whether the statement was made in response to a question. *McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008); *Pickron v. State*, 515 SW.3d 462, 465 (Tex. App.—Houston 2017, pet. ref'd). This comports with the purpose of the excited-utterance exception that assumes the declarant is not then capable of reflecting or fabricating the information related. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Thus, "[t]he trustworthiness of the statement is founded on the fact that it is the event that speaks through the person and not merely the declarant relating the event." *Tienda v. State*, 479 S.W.3d 863, 875 (Tex. App.—Eastland 2015, no pet.) (citing *Zuliani*, 97 S.W.3d at 595). The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event"

or condition at the time of the statement. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992).

The trial court does not abuse its discretion in admitting an excited-utterance statement. *See Osbourn v. State*, 92 S.W.3d 531, 537–38 (Tex. Crim. App. 2002); *see also Zuliani*, 97 S.W.3d at 595 (applying abuse of discretion standard of review to a trial court's decision to admit evidence).

#### ANALYSIS

We begin with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Martinez must overcome the presumption that, under the circumstances, the challenged action constituted sound trial strategy. *Id.* Any allegation of ineffective assistance of counsel must be firmly founded in the record and the record must affirmatively demonstrate counsel's ineffectiveness. *See Johnson*, 624 S.W.3d at 586. Martinez did not file a motion for new trial or otherwise create a record elucidating the tactical reasons for counsel's decisions and trial strategy. Martinez's trial counsel should be given an opportunity to explain his actions before being denounced as ineffective. *Id.* When, as here, counsel was not afforded an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See id.* The record is silent as to why counsel chose not to object to either the videos or the officer's or detective's testimony regarding the witnesses' statements that Martinez drove away from the accident scene after hitting the victim.

However, we note the record reflects the State and Martinez's counsel agreed to mute portions of the audio from Detective Pierson's body-camera recording, presumably removing inadmissible statements from it before playing it for the jury. Additionally, objections to the

admission of the statements made in the recordings and further testified to by Officer Brown and Detective Pierson would likely have been futile.

Specifically, upon arriving at the accident scene within five minutes of its occurrence, a member of the victim's family met Officer Brown as she was exiting her patrol vehicle, and in an excited and alarmed state told Officer Brown that Martinez had driven away after hitting the victim. As Officer Brown walked towards the victim, other family members spoke out about Martinez being stopped a couple of blocks away. Similarly, Detective Pierson arrived on the scene shortly after the accident and was directed to Martinez's parked car. Upon exiting his patrol vehicle, he saw Martinez and other members of the victim's family. Those family members, also still impacted by the emotion of the incident, told Detective Pierson that Martinez left the scene of the accident, but they stopped him. Thus, the trial court could have admitted these statements under the excited-utterance exception to the hearsay rule. *See* TEX. R. EVID. 803(2); *McCarty*, 257 S.W.3d at 241; *Zuliani*, 97 S.W.3d at 595–96.

On this silent record, we cannot presume counsel's decisions not to object to the admission of the body-camera footage and playing it to the jury fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88; *Thompson*, 9 S.W.3d at 813; *see also Bone*, 77 S.W.3d at 833. We therefore conclude Martinez has failed to satisfy the first prong of *Strickland* as to counsel's decisions not to object to the challenged evidence. *See Strickland*, 466 U.S. at 687–88; *Tong*, 25 S.W.3d at 712.

Moreover, even if we were to assume counsel's performance was deficient, Martinez must show that the deficient performance prejudiced his defense. *See Bone*, 77 S.W.3d at 833. That is, Martinez must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* (quoting *Mitchell v. State*, 68 S.W.3d

640, 642 (Tex. Crim. App. 2002)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Mitchell*, 68 SW.3d at 642. Martinez admitted to hitting the victim with his car and not stopping immediately at the scene of the accident. Both Officer Brown and Detective Pierson testified that Martinez stopped his vehicle about two to three blocks from the scene of the accident, regardless of whether Martinez purposely stopped his car or because the victim's family stopped him. Officer Brown and Detective Pierson also testified Martinez had multiple opportunities to stop closer to the accident scene after his car struck the victim. Under these circumstances, we conclude Martinez has failed to show any alleged deficient performance prejudiced his defense. Even assuming counsel's performance was deficient in failing to object to the admission and playing of the body-camera footage, we cannot conclude, within a reasonable probability, that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694.

Accordingly, Martinez's sole issue is overruled.

## CONCLUSION

We affirm the trial court's final judgment of conviction.

Irene Rios, Justice

DO NOT PUBLISH