**Opinion issued April 21, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00742-CR

_____

**ARMANDO JESUS PEDRAZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1817953**

---

## MEMORANDUM OPINION

A jury found appellant, Armando Jesus Pedraza, guilty of the felony offense

of assault on a family member by impeding breathing or circulation.[1]  After appellant

pleaded true to the allegations in two enhancement paragraphs that he had been

---

[1]    *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(2)(B).

previously convicted of certain offenses,[2] the trial court assessed appellant's punishment at thirty years' confinement. In one issue, appellant contends that he was denied effective assistance of counsel during the punishment phase of trial because his trial counsel (1) failed to object to hearsay testimony and (2) erroneously instructed appellant that he could testify and still exercise his Fifth Amendment right to remain silent.

We affirm.

## Background

Appellant was charged with the offense of assault on a family member by impeding the breathing or circulation of the blood of the complainant, Maria Esther Dominguez, in May 2023. Appellant pleaded not guilty, and the case proceeded to trial.

During the guilt phase of trial, the complainant testified that she met appellant on Facebook in 2022. They began dating, and appellant moved in with the complainant four months later.

---

[2] In 2022, appellant was convicted of the misdemeanor offense of assault of a family member in trial court cause number 2372682 in the County Criminal Court at Law No. 16 of Harris County, Texas. In 2006, he was convicted of the felony offense of possession with intent to distribute a controlled substance, namely cocaine weighing at least 400 grams, in trial court cause number 1032678 in the 208th District Court of Harris County.

The complainant testified that when she returned home from work on May 2, 2023, appellant took her cell phone and began looking for conversations with other men. When he saw a conversation on the complainant's phone with a male friend, he became irate, accused the complainant of cheating on him, and told her he was going to kill her. The complainant testified that appellant picked her up and threw her on the bed. Appellant restrained the complainant's arms and began punching her head and ears and choking her. The complainant had trouble breathing and bit her tongue. After appellant stopped hitting her, she tried to leave but became dizzy and fell.

The complainant left the house the next morning and called 911 to report the assault. She had a busted lip, a black eye, and a bump on her head; her face was swollen, and her throat and body were sore. The officers accompanied the complainant back to the house so she could pack a bag and leave. Photographs of the complainant's injuries and bloodstains on the bed, as well as the complainant's telephone calls to 911, were admitted into evidence.

The jury found appellant guilty of the felony offense of assault on a family member by impeding breathing or circulation.

At the start of the punishment phase, appellant pleaded true to the allegations in two enhancement paragraphs that he had been previously convicted of the offense of assault of a family member and the felony offense of possession with intent to

3

distribute a controlled substance. The State called several witnesses, including the complainant, to testify.

Pasadena Police Department ("PPD") Officer H. Trujillo testified that in August 2021, he was dispatched in response to a disturbance call. He spoke with Carol Rodriguez who told him that appellant had entered their bedroom and struck her because he believed she had been texting another man. Officer Trujillo testified that Rodriguez sustained bruising to her eye and both arms as a result of appellant's assault. As a result, appellant was charged with the offense of assault of a family member. Photographs of Rodriguez's injuries were admitted into evidence.

Through the testimony of Harris County Sheriff's Office ("HCSO") Officer D. Medina, a latent print examiner, the State introduced appellant's previous judgments of conviction for the offenses of assault of a family member and driving while intoxicated ("DWI") and the felony offense of possession with intent to deliver a controlled substance. The State also introduced evidence of appellant's convictions for the first-degree felony offense of sale of a controlled substance and the offense of making a terroristic threat in Minnesota.

HCSO Deputy V. Garcia testified that he responded to a 911 call from the complainant in February 2024. According to Deputy Garcia, appellant was harassing the complainant through cell phone calls in violation of the conditions of

4

his bond for the present case. Appellant was later charged with violating his bond conditions.

PPD Officer Z. Mabes testified that in February 2024, he investigated a possible auto theft. Officer Mabes testified that following his investigation, appellant was charged with the offense of burglary of a motor vehicle. Appellant was on bond in the present case when he was charged with the new offense.

The complainant testified that appellant smoked methamphetamine regularly during their relationship. According to her, appellant was a "totally different person" when he smoked; he became paranoid and thought "people were after him." The complainant testified that appellant was violent toward her on several occasions before the assault in this case. In August 2022, appellant struck the complainant in the face after becoming angry when he thought he was late for work. The complainant testified that she called the police and appellant was charged with the offense of assault. Appellant later told her that he was on bond at the time for assaulting another woman. The complainant testified that appellant called her numerous times after the August 2022 assault in violation of the conditions of his bond.

When the State asked the complainant why she wanted to testify, the following exchange took place:

Q.    Did you want to testify today?

A.     Yes.

Q.     Why do you want to testify about what happened?

A.     Because I don't want this to happen to anybody else.

Q.     Are you worried that [appellant] would do this to anyone else?

A.     Yes.

Q.     Why do you believe that?

A.     Because it's a pattern. I mean, from -- from the research that I've done -- you know, from a case where he held a woman hostage and her child.

Q.     Do you know what case that is?

A.     A Minnesota case, I think.

Q.     How did you find out about that case?

A.     I Googled.

Q.     What did you Google?

A.     His name.

Q.     Why did you do that?

A.     I just had a feeling. Out of curiosity, let me just look it up.

Q.     And when you Googled his name, what did you find?

A.     I found an article.

Q.     What kind of article?

A.     It was an article that explained, you know, what had happened to that woman and her child.

. . . .

Q.      What do you remember that that article said?

A.      I remember that it stated that the woman was held captive at her house with her child, and that she was receiving -- she was getting beaten -- being beaten by him, and that he had bit her. It stated that he had a machete and beg[a]n to cut her in pieces with the machete.

It also said that her child [was] there . . . , and the child was listening, and said that the child testified to that, as well.

. . . .

Q.      When you read that article, how did you feel?

A.      It's like a bucket of water just poured all over me, like, huge anxiety.

Appellant's trial counsel did not object to this testimony. After the State rested, trial counsel called appellant to testify.

Appellant testified that he had pleaded true to the allegations in two enhancement paragraphs that he had been convicted of the offense of assault of a family member in 2022, for which he served a year in jail, and the felony offense of possession with intent to deliver a controlled substance in 2006, for which he was sentenced to fifteen years' confinement. He also testified that he had pending criminal charges against him at the time of trial, including a charge for the offense of burglary of a motor vehicle. According to appellant, he was drunk and using drugs at the time of the burglary offense. When trial counsel asked whether he

7

intended to assert his Fifth Amendment right against self-incrimination regarding the pending charges, appellant answered "yes."

On cross-examination, appellant denied causing the bruising to the complainant's eye that appeared in the photographs admitted into evidence. Trial counsel objected, stating, "[Appellant] at this point still has a pending assault with previous conviction, and it's still pending, so these questions right now are having him self-incriminate. He's incriminating himself for a potential future trial." Noting that appellant had taken the stand, the trial court overruled the objection.

Later, when the State asked appellant if he knew how the complainant had sustained the scratch to the back of her ear, appellant replied that he "would plead the fifth." The trial court instructed appellant to answer the question, and appellant denied causing the injury to the complainant's ear.

While testifying, appellant continued to deny the complainant's account of the assault, stating:

> A.     No. My testimony is that nothing of what she's saying happened. My testimony is that I still maintain my innocence, okay, on all the pending charges that you have, and I would like to appeal the one that is just right now the verdict. So, yes, what I'm trying to tell you, in essence, is I think I need to take the Fifth here, but you're not allowing me to.

The State replied, "No, not how that works. You elected to testify, and you have to answer these questions." At that point, the trial court stated, "Let me make sure everybody is aware. He elected to testify. He can't testify about some things and

then take the Fifth on other things. It is not allowed. You're going to have to answer the questions because you took the stand." Appellant responded, "[O]kay."

Appellant admitted to punching his former girlfriend in the eye, a charge for which he was on bond when he was arrested for assaulting the complainant in August 2022. He also admitted to violating his bond conditions while the present case was pending by using drugs and alcohol.

After both sides rested, the trial court found the two enhancement paragraphs true[3] and sentenced appellant to thirty years' confinement.

## Ineffective Assistance of Counsel

In his sole issue, appellant contends that he was denied effective assistance of counsel during the punishment phase of trial because his trial counsel (1) failed to object to hearsay statements the complainant made about the news article she read detailing the allegations surrounding the terroristic threat charge against him in Minnesota and (2) erroneously instructed him that he could testify and still exercise his Fifth Amendment right to remain silent.

### A.      Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to counsel in criminal prosecutions. U.S. CONST. amend. VI; *see also* TEX. CONST.

---

[3]      The trial court stated that it would "make no specific findings as to the Minnesota case."

art. I, § 10. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)).

To prevail on an ineffective assistance claim, a defendant must prove that (1) his trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). The defendant bears the burden of proving both prongs by a preponderance of the evidence. *Strickland*, 466 U.S. at 687; *Dryer v. State*, 674 S.W.3d 635, 646 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd). "The purpose of this two-pronged test is to assess whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result." *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013). A failure to make a showing under either prong of the *Strickland* test defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Under the first prong, trial counsel's performance is deficient if it falls below an objective standard of reasonableness. *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013). Judicial scrutiny of counsel's performance is highly deferential. *Villa*, 417 S.W.3d at 463. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

10

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hart*, 667 S.W.3d at 781 (quoting *Strickland*, 466 U.S. at 689).

An ineffective assistance claim "must be firmly rooted in the record." *Id.* at 782. Generally, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). Trial counsel should ordinarily be given an opportunity to explain his conduct on the record before a court will sustain an ineffective assistance claim. *Id.* When counsel has not been given such an opportunity, "courts 'commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)). Counsel's performance is deficient only if the court finds, as a matter of law, that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his . . . subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

Under *Strickland*'s second prong, we must determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11

proceeding would have been different. 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That an error had "some conceivable effect on the outcome" will not suffice. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). When a defendant claims that his trial counsel's deficient performance resulted in a harsher punishment, he must show that a reasonable probability exists that, absent the alleged errors, the fact finder would have assessed a more lenient punishment. *See Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022).

**B.     Analysis**

Appellant asserts that he was denied effective assistance of counsel in two ways. First, his trial counsel failed to object during the punishment phase to the complainant's hearsay testimony[4] concerning the news article she read online about appellant's terroristic threat charge in Minnesota. He argues that her testimony that she remembered the article stating that appellant had hit and bitten the Minnesota complainant and cut her with a machete[5] constituted hearsay and speculation, was

---

[4]     Hearsay is an out-of-court statement offered for the truth of the matter asserted. *See* TEX. R. EVID. 801(d).

[5]     Contrary to appellant's assertion, the complainant did not testify that appellant hit and bit the Minnesota complainant or that he cut her with a machete; rather, she testified that the news article stated it.

12

unfairly prejudicial,[6] and it violated his right to confront and cross-examine the witnesses against him.[7] He argues that trial counsel's failure to object was deficient performance because no reasonable trial strategy could justify allowing the trial court to hear such aggravating evidence.

Second, he asserts that trial counsel also erroneously advised him that he could testify at the punishment phase of trial and still plead the Fifth Amendment concerning questions about pending criminal charges against him and the charged offense.[8] According to appellant, trial counsel's incorrect belief and advice to him concerning the Fifth Amendment resulted in the trial court hearing testimony from him about all of his extraneous offenses and the present conviction. He argues that these errors were so outrageous that no competent attorney would have made them.

Even assuming trial counsel's failure to object to the complainant's testimony about the news article and his erroneous advice to appellant that he could both testify

---

[6] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." TEX. R. EVID. 403.

[7] A defendant has a constitutional right to confront and cross-examine the witnesses against him. *See* U.S. CONST. amend. VI.

[8] If a criminal defendant exercises his right to testify, he is subject to the same rules of examination and cross-examination as any other witness. *See Felder v. State*, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992) (noting once defendant decides to testify, he opens himself up to cross-examination on any relevant subject matter); *Temple v. State*, 342 S.W.3d 572, 593 (Tex. App—Houston [14th Dist.] 2010) ("The scope of cross-examination is wide open, and once the defendant testifies at trial, he opens himself up to questioning by the prosecutor on any subject matter that is relevant."), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

and assert his Fifth Amendment right against self-incrimination established the first prong of the *Strickland* test, we conclude the record does not affirmatively demonstrate the second prong of the *Strickland* test—that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. 466 U.S. at 694.

Appellant asserts that the combined errors by trial counsel permitted the trial court to consider evidence that was aggravating in determining his punishment. According to appellant, trial counsel's deficient performance prejudiced the defense as demonstrated by the fact that the trial court sentenced him to thirty years' confinement for an offense with a minimum sentence of five years' confinement. Thus, appellant claims that his trial counsel's deficient performance resulted in a harsher punishment. *See Swinney*, 663 S.W.3d at 90.

The habitual felony offender statute elevated appellant's offense from a second-degree felony[9] to a first-degree felony.[10] The punishment range for a

---

[9]  Texas Penal Code section 22.01(b-3) provides that an offense under section (a)(1) (bodily injury assault) is a felony of the second degree if: (1) the offense is committed against a person with whom the defendant has a "dating relationship," (2) it is shown on the trial of the offense that the defendant has been previously convicted of an offense that was committed against a person with whom the defendant had a "dating relationship," and (3) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. TEX. PENAL CODE ANN. § 22.01(b-3).

[10]  "If it is shown on the trial of a felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable

14

first-degree felony offense is imprisonment for life or for any term of not more than ninety-nine years or less than five years. *See* TEX. PENAL CODE ANN. § 12.32(a).

The trial court was presented with evidence of appellant's lengthy criminal history, including a conviction in October 2022 for assaulting another woman for which he served a year in jail. The complainant testified that appellant was on bond for that offense when he first assaulted the complainant in August 2022; appellant was later charged with assault based on the August 2022 incident. Appellant's judgment of conviction for the offense of DWI was also admitted into evidence, and the trial court heard evidence that appellant violated several bond conditions while on bond for the present offense, including contacting the complainant, burglarizing a vehicle, drinking alcohol, and using drugs. And, although it made no specific findings, the trial court had before it evidence of appellant's convictions for the offense of making a terroristic threat and first-degree felony drug offense in Minnesota. Finally, appellant pleaded true to, and the trial court found true, the allegations in the enhancement paragraphs that appellant had been previously convicted of the offense of assault of a family member and the felony offense of possession with intent to deliver a controlled substance.

---

under [Texas Penal Code] [s]ection 12.35(a), on conviction the defendant shall be punished for a felony of the first degree." *Id.* § 12.42(b).

15

The punishment range in this case was imprisonment for five to ninety-nine years or life. *See* TEX. PENAL CODE ANN. § 12.32(a). The trial court sentenced appellant to thirty years' confinement, which is less than the forty-four years the State requested. On this record, we conclude that appellant did not demonstrate a reasonable probability that, but for counsel's errors, the trial court would have assessed a more lenient punishment. *See Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) (noting if deficient performance might have affected punishment verdict, prejudice issue is whether there is reasonable probability that, absent errors, sentencer would have assessed more lenient punishment). Because appellant did not establish the second prong of the *Strickland* test, we hold that his ineffective assistance claim fails. *See Lopez*, 343 S.W.3d at 142 ("Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective."). We overrule appellant's sole issue.

### Conclusion

We affirm the trial court's judgment.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).

16